[S. F. No. 13822. In Bank.—June 30, 1930.]

DANIEL BARTON, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Daniel Barton, *in pro. per.*, C. H. Fish and William F. Herron, for Petitioner.

O. K. Cushing for Respondent.

THE COURT.—The petitioner was charged by The State Bar of California with a violation of rule 2 of the Rules of Professional Conduct of The State Bar, approved by the Supreme Court of the state on May 24, 1928. Said rule reads as follows: "A member of The State Bar shall not solicit professional employment by advertisement or otherwise. This rule shall not apply to the publication or use of ordinary professional cards, or to conventional listings in legal directories." (204 Cal. xci.)

In response to an order to show cause issued by The State Bar and served upon petitioner a hearing on said charge

was had before Local Administrative Committee No. 4 of the City and County of San Francisco. Said hearing resulted in a finding of said committee that petitioner had violated said rule 2 in that petitioner for a period of six months immediately prior to the filing of said charge against him, and thereafter continuously up to the time of said hearing, had published and caused to be published in a daily newspaper printed and published in the city of San Francisco and in the advertising section of said newspaper an advertisement reading as follows: "D. Barton. Advice free, all cases, all courts. Open eves. Room 907, 704 Market Street, phone Douglas 0932." For the violation of said rule the Local Administrative Committee recommended that the accused be reprimanded. The finding of the Local Administrative Committee No. 4 was reported to and approved by the Board of Governors of The State Bar of California. The latter body, however, recommended to this court as a penalty to be imposed for his violation of said rule that petitioner be suspended from the practice of law for a period of three months. The matter is now before us upon the application of petitioner to have this court review the action of the Board of Bar Governors and of said Local Administrative Committee No. 4 as set forth herein pursuant to the provisions of section 38 of the State Bar Act. (Stats. 1927, p. 38.)

It is first contended by petitioner that the notice of the hearing of the charge against petitioner before said Local Administrative Committee No. 4 was insufficient, and gave said committee no power or authority to hold said hearing. The notice states that petitioner "on the 7th day of July, 1929, and for some time prior thereto" has violated said rule 2 and sets out in full a copy of said rule. No specific act of petitioner was stated in said notice, nor was he informed in what manner he was charged with violating said rule, whether by personally soliciting business, or by improperly advertising therefor.

We question the sufficiency of said notice, but we think petitioner has waived any defect therein by his appearance in response thereto before said committee at the time and place stated in said notice and by the fact that he neither made said or any objection to said notice nor to proceeding with said hearing thereon. He voluntarily gave testimony

at said hearing and otherwise participated in the proceedings taken before said committee. He appeared to be fully cognizant of the precise charge against him as shown by his testimony given at said hearing. At the close of said hearing in response to a ruling made by said committee he stated, ''That is fair enough. As I say, I don't believe I have violated the rule referred to. I am willing, gentlemen, to test it; to take it to the Supreme Court on my constitutional rights in a friendly way.'' The proceedings before the committee were closed with this statement of the petitioner.

Petitioner places no great emphasis upon the contention that he was not accorded due notice. Neither does he claim that the evidence was not sufficient to support the findings of the Local Administrative Committee No. 4 for he admitted quite frankly before said committee that he had published said advertisement, and that he had continued to publish said advertisement after he had been requested by the office of The State Bar at San Francisco to discontinue the same. The gravamen of his complaint is that the Board of Governors of The State Bar is without power to suspend an attorney for the violation of the Rules of Professional Conduct formulated by said Board of Governors, and approved by the Supreme Court, and particularly rule 2 thereof.

The contentions of petitioner in this regard are three: (1) The legislature by reason of the inhibitions of section 1 of article III of the state Constitution cannot delegate the power to formulate and enforce rules of professional conduct; (2) rule 2 of the Rules of Professional Conduct is an unreasonable rule; and (3) the advertisement by the petitioner does not come within 'the prohibition of rule 2.

There is no merit in the first contention. As we view it, there is no delegation of power. The Rules of Professional Conduct formulated by the Board of Governors of The State Bar, by the approval of the Supreme Court thereby became the rules of that court, and the power of the court to make reasonable rules and regulations is not open to question. This power is a power inherent in the courts and needs neither lengthy discussion nor extended citations of authorities to support it. No decision has been called to our attention which goes so far as to hold that the

Supreme Court has deprived itself of its inherent power of disciplinary supervision over the conduct of attorneys who are officers of the court. On the contrary, in the recent case of *Brydonjack* v. *State Bar*, 208 Cal. 439 [66 A. L. R. 1507, 281 Pac. 1018], the possession by the courts of such inherent and implied powers as it is necessary for them to possess in order "to properly and effectively function ' as a separate department in the scheme of our state government" was expressly affirmed.

Petitioner earnestly argues that rule 2 which prohibits the solicitation of professional employment by advertisement is an unreasonable regulation. He argues that inasmuch as advertising is universally regarded as a legitimate activity, an activity indispensable to the success of business concerns, it follows that a rule prohibiting the solicitation of professional employment by advertising is unreasonable. In support of his contention he states that "No amount of preaching can alter the cold, indisputable fact that the law has ceased to be a sacrosanct profession and has become a highly competitive business." It is admitted, of course, that the rule is not arbitrary and discriminatory with reference to the members of the legal profession for it applies to each and every member with equal force. The point made, therefore, is that the rule is discriminatory against the legal profession as a whole in that the members are prohibited from doing that which others in commercial occupations and in business are permitted to do as a matter of course.

In the consideration of the reasonableness of this rule, it should be borne in mind that it is a rule proposed and promulgated by the members of the profession itself, and is not a rule forced upon the profession by a law-making body not in sympathy, perhaps, with the problems of the legal profession. The State Bar Act was passed as the result of an insistent demand for a more effective maintenance of proper professional standards. By said act The State Bar, consisting of all members of the legal profession entitled to practice law in this state, was charged with the duty of keeping its own house in order—with responsibility for the qualifications, conduct and discipline of its members. (15 Cal. Law Review, 313.) It should also be borne in mind that this rule is not a "hang-over" from the 16th

and 17th century "when (to quote from petitioner's brief) social and economic conditions were entirely different from those which prevail in the twentieth century in the United States." It was approved by the Supreme Court on May 24, 1928, and having been adopted by the representatives of The State Bar may be presumed to represent the ideas and attitude of the legal profession as a whole. It is perhaps by virtue of the fact that the profession of the law has come to be considered by some attorneys solely as "a highly competitive business" that it became necessary to give legal sanction to a rule which had theretofore been enforced merely by public opinion.

It is obvious, we think, that the legal profession does stand in a peculiar relation to the public, and that there exists between the members of the profession and those who seek its services, a relationship which can in nowise be regarded as analogous to the relationship of a merchant to his customer. For instance, it may be pointed out that if a customer discovers that one merchant is unworthy of his patronage and trust, he does not thereby brand all merchants as dishonest and unethical, whereas if a client becomes convinced that the attorney to whom he has entrusted the protection of his interests is unworthy of the trust reposed in him, he is very apt indeed to classify attorneys as a class as unworthy of trust and to feel that they are all scoundrels. For this reason alone, it is important to the legal profession as a whole that nothing shall be done by any member which may tend to lessen in any degree the confidence of the public in the fidelity, honesty and integrity of the profession. And it is by reason of the confidential relationship existing between attorneys and clients that certain rules and regulations are applicable to the profession which are not applicable to a business. In *In re Galusha*, 184 Cal. 697, 698 [195 Pac. 406], it was said, "The adequate protection of public interests, as well as inherent and insuperable peculiarities pertaining to the practice of law, require a more detailed supervision by the state over the conduct of this profession than in the case of almost any other profession or business." And in *State Bar* v. *Superior Court*, 207 Cal. 323 [278 Pac. 432], the court said: "the profession and practice of the law . . . is essentially and more largely a matter of public interest and

concern, not only from the viewpoint of its relation to the administration of civil and criminal law, but also from that of the contacts of its membership with the constituent membership of society at large, whose interest it is to be safeguarded against the ignorances or evil dispositions of those who may be masquerading beneath the cloak of the legal and supposedly learned and upright profession."

Notwithstanding the declaration of the petitioner, we do not believe that the profession of the law is, or ought to be, merely "a highly competitive business." And because it is not, and because it is necessary that the public should not be given the idea that it is so considered by the members of the profession, the rule against the solicitation of business by advertisement is a reasonable regulation. As was said in *People ex rel. Attorney-General* v. *MacCabe*, 18 Colo. 186 [36 Am. St. Rep. 270, 19 L. R. A. 231, 32 Pac. 280], "The ethics of the legal profession forbid that an attorney should advertise his talents or his skill, as a shopkeeper advertises his wares." And as was said in canon 27 of the Canons of Ethics of the American Bar Association, "The most worthy and effective advertisement possible, even for a young lawyer, and especially with his brother lawyers, is the establishment of a well-merited reputation for professional capacity and fidelity to trust."

Rule 2 expressly excepts the publication or use of ordinary professional cards, and the conventional listings in legal directories. It, therefore, permits the practitioner to keep his name before the public in the form and to the extent designated in the rule. Inasmuch as all the members of the profession are alike forbidden to do more than this, this should be sufficient. It can readily be understood how unfavorably the public would react toward the profession as a whole if there were published large fullpage advertisements extolling the learning, ability and capacity of an attorney "to get results." It would be hard to draw the line as to what was improper and what was proper in advertising and the regulation by The State Bar which prohibits all advertising except professional cards and conventional listings is, we think, a reasonable one.

However, it may be conceded that the advertisement inserted by the petitioner is not as to its main content a particularly serious violation of rule 2, and that had it not

been for the fact that petitioner persisted in running the advertisement in the foregoing form after he had been requested to discontinue it, it is doubtful if any action would have been taken by the Board of Governors of The State Bar. It is admitted the only serious infraction of the rule is the insertion of the words "Advice free" and that had these words been omitted, the insertion of his name, his business address, his phone number and that he was engaged in the general practice of the law, would not have merited any disciplinary action.

We cannot, however, follow the argument of the petitioner that these objectionable words are not a solicitation for employment. Obviously, they could have no other purpose than to induce prospective clients to come to his office with the hope of getting them to disclose their affairs and to seek his advice upon matters which would lead to his employment as their attorney. They were "the syrup with which to entice the fly." And it is equally obvious that if the words did not have the effect of bringing clients to his office who would ultimately become paying clients, no purpose could be subserved by inserting them. It will suffice to say, without further argument on this phase of the case, that in our opinion the petitioner by the insertion of the words "Advice free" in the advertisement was guilty of an infraction of the rule forbidding solicitation of professional employment by advertisement.

We are, however, of the opinion that the Board of Governors in recommending as a penalty for the infraction of said rule suspension from the practice of the law for a period of three months was too severe, and we, therefore, accept in lieu of said recommendation, the recommendation of Local Administrative Committee No. 4 that he be reprimanded, and this opinion shall constitute such reprimand.