[S. F. No. 14101.   In Bank.—July 25, 1931.]

DANIEL BARTON, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Daniel Barton, *in pro. per.,* for Petitioner.

Herbert W. Erskine and Keyes & Erskine for Respondent.

SEAWELL, J.—Charges were preferred against petitioner, a member of The State Bar of California, and a citation was duly issued thereon directing him to appear before the local administrative committee of San Francisco, No. 2, The State Bar of California, and show cause why he should not be disbarred, suspended or reproved by reason of his conduct, alleged to involve moral turpitude, dishonesty and corruption and the violation of the rules of professional conduct adopted by the board of governors of said The State Bar.

The particular reprehensible conduct recited in the order to show cause and which will hereafter appear arose from a bankruptcy proceeding pending in the United States District Court, Southern Division, Northern District of California, which petitioner had engaged himself to institute and conduct to the procurement of the final order of discharge for an agreed fee. His clients, Victor Rose and Hilda Rose, husband and wife, had formerly conducted a copartnership business under the name of Rose Bros., and said copartner-

ship being unable to meet its obligations, it was forced into insolvency by the petition of its creditors. The copartnership in the course of time received a final discharge, but later said Victor and Hilda Rose discovered that the order discharging the copartnership did not inure to their benefit as individuals, and they therefore petitioned to be adjudged bankrupts. It is in this proceeding that the petitioner was employed. The committee found and the evidence amply sustains the finding that petitioner agreed to put both individuals through insolvency upon payment to him of the sum of $200, petitioner herein to pay the costs of both proceedings. With the intent of salvaging as much as possible of said sum, which would ordinarily have been paid on account of costs, petitioner herein advised said petitioners in bankruptcy to take the paupers' oath. In such cases the clerk's fee, in the sum of $30 for each proceeding, is not exacted. This fee, however, in the absence of the filing of said oath, is payable upon filing the petition and schedules. A fee in the sum of $12.50 is necessary in each case to take care of the publications and expense of calling the first meeting of creditors, which must be paid in every case. The petitioner, who was to be paid $50 at the time of employment, $50 at the time of the first hearing of creditors, and $100 upon the making of the orders of discharge, paid only the fees which must be paid in all cases, to wit, $12.50 in each case for expenses of calling of the first meeting of creditors, and none other, until it subsequently developed that he had received his second installment of $50 on account of his agreement with his clients. The petitioner in bankruptcy is required to answer under oath in his schedule an interrogatory as to what sum or sums have been paid to counsel, and to whom for services rendered in the bankruptcy proceedings. The answers given to said questions in each schedule was, ''None''. The value of such information for the just administration of the bankrupt's estate is obvious. Besides, the payment of a fee to an attorney is material to and an important element for consideration in determining whether or not petitioner is entitled to have his petition and schedule filed without the payment of said clerk's filing fees.

At the first meeting of creditors, held April 28, 1930, interrogatories propounded to Victor Rose developed the

fact that he had, contrary to the averment contained in his schedule, paid petitioner herein before or at the time the petition in bankruptcy was filed to wit, April 4, 1930, the sum of $50, and again on or before the time said meeting of creditors was held he was paid an additional sum of $50. Upon the development of these facts petitioner herein, on the same day and after said discoveries were made, paid to John O. England, clerk of the bankruptcy court in which said matters were pending, the sum of $50, $25 of which was applied to the credit of each matter, thus still leaving a balance of $5 due on account of each filing charge.

Petitioner herein made no statement under oath at the hearing of the proceeding taken against him and argues in his brief that he did not make up the bankrupt's schedules, but that they were prepared by one of said bankrupts, Victor Rose, and his daughter, and he should not be held accountable for their inadvertence. The petitions and schedules were in the possession and care and under the scrutiny of the petitioner herein, and he caused a notary public to affix his jurat and seal to the paupers' oath in the absence of and without obtaining the personal acknowledgment of the alleged affiants, and likewise as to the petitions and schedules filed upon the representation that said oath *in forma pauperis* had been duly administered. That such a concatenation of significant events could have escaped the attention of counsel in his investigation and preparation appears exceedingly improbable, and it would not be surprising if the examining board in its consideration of the accusations on their merits gave but little, if any, weight to such a defense offered in avoidance of indisputable facts.

Petitioner in his brief intimates that besides the two $12.50 cost items and the $50 payment on account of filing fees other sums were paid out by him for notarial fees and on account of other costs. The notary was a witness in the proceeding, but he was not asked by petitioner whether he had been paid anything on account of notarial fees, and no showing was made at the hearing that any other sums had been paid by him for any purpose whatsoever.

We have read the evidence in the case carefully and we are of the view that no wholesome purpose would be served by an analysis of the same. Petitioner has not met the issue as squarely in his brief as the importance of the charges

seems to merit, but seeks in a somewhat caustic style to minimize its accusatory effect. He seems to be laboring in the belief that the governors of The State Bar of California and those who have anything to do with its machinery are plotting his undoing. As an illustration, he points to the proceeding *Barton* v. *State Bar*, 209 Cal. 677 [289 Pac. 818], wherein said The State Bar recommended his suspension for a period of three months for the violation of rule 2, Rules of Professional Conduct of The State Bar, which prohibits the solicitation of employment by advertisement, and this court substituted in lieu of said recommendation a reprimand for his misconduct. We see no evidence from our examination of the record that there exists the slightest grounds for the apparent belief that any one of the fifteen or more of his brethren in the profession who compose the committee has any purpose or intent to oppress petitioner or to deal unjustly with him. It rather appears that petitioner denies the right and resents the effort of The State Bar to regulate the practice of the law on the theory that all laws which purport to confer such powers are invalid for reasons which have been argued over and over to this court with the result that the bar acts have been upheld.

The policy of the acts is something with which we are not concerned, that being a matter which rests largely with the will of the lawyers of the state to remedy if in their judgment there exists any need of change. It is our duty to enforce the law and impose such penalties as will bring about a compliance with the rules as they have been made by competent authority.

The local administrative committee found the accused guilty of the first offense charged and herein set out, and also guilty of a violation of the provisions of sections 278, 282 and 287 of the Code of Civil Procedure, and recommended as disciplinary action that he be suspended from the practice of the law for a period not less than three months. The matter coming regularly before the governors of The State Bar, that body, on August 14, 1930, adopted the findings of said local administrative committee and recommended to this court that the accused be disbarred from the practice of the law in the state of California.

Upon a full consideration of the matter this court is of the view that a suspension from the practice of the law as

defined by the decisions of the appellate courts of this state for a period of six months would not be disproportionate to the misconduct herein reviewed. It is made the order of this court that he is hereby suspended from the practice of the law in all the courts of this state for said period of six months, said suspension to become effective thirty days from the service of notice of the within order, said service to be made upon him by the clerk of this court by means of the United States registered mail.

Shenk, J., Curtis, J., Preston, J., and Waste, C. J., concurred.

Rehearing denied.