[S. F. No. 15223.   In Bank.—January 28, 1935.]

DANIEL BARTON, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Daniel Barton, *in pro. per.*, for Petitioner.

Philbrick McCoy for Respondent.

PRESTON, J.—This proceeding was instituted to review an order of the board of governors of The State Bar of California, adopting findings of the local administrative committee, and recommending to this court that petitioner be disbarred from further practice of the law in this state.

The facts, as taken from the fair and complete review of the evidence incorporated in said findings, are substantially as follows: Prior to October, 1933, one Childs, employed at a garage as maintenance and serviceman, believed that his employer and the Castor Oil Company were engaged in the practice of putting gasoline of said company in the tanks of the garage bearing Union Oil Company 76 labels and selling said gasoline to customers as Union gasoline. This practice

is termed "dumping". Childs talked the matter over with Simpson, a customer, and they decided that, for the benefit of the public, the Castor company should be notified to discontinue the deception. A few days prior to October 24, 1933, they called at petitioner's office and disclosed to him the foregoing information, stating that they did not expect any money, but merely wished, without having the matter become public, to report it in some way so as to stop the "dumping". Petitioner told them he would have to make an investigation. However, on October 24th, without having made any investigation, he wrote on his legal letterhead, to the Castor company as follows:

"I have a client by whom a complaint for damages has been lodged with me to prosecute and file action on same, but before commencing such, I would be pleased to interview your Mr. Castor, as, you may rest assured that I have no desire to do any injustice, but am called upon for the performance of a duty. The matter involved is surely very imperative and important to your business. Hence I would suggest that you come in and see me on or before the 28th day of October and I further suggest that the afternoon is the best time to find me here in the office. Thanking you for your attention and early call, I am, Yours very truly, Daniel Barton."

Upon receipt of this letter the Castor company consulted Mr. Haven, its attorney, who immediately telephoned petitioner to ascertain the nature of the claim. Petitioner declined to discuss it over the telephone, but made an appointment for Mr. Haven to call at his office the following morning. At this meeting petitioner informed Mr. Haven that the matter was really for the district attorney; that the Castor company had been adulterating gasoline and that petitioner's clients had been damaged from $2,000 to $3,000, refusing, however, to reveal who the clients were or what their claim was and stating that he did not want to file suit, but would consider a settlement. The next day he telephoned Mr. Haven and told him that his clients' claim was for "dumping", of which practice Mr. Haven stated he was sure the Castor company had not been guilty, asking for further details, which petitioner promised to obtain. Thereafter, between November 1 and 4, 1933, following several unsuccess-

ful attempts, petitioner and Mr. Haven finally made connections by telephone. The latter had his telephone so arranged that his two office associates could listen in on the conversation. Petitioner stated to Mr. Haven that he had affidavits from six people who had worked in pairs checking deliveries made by said company and had found very definite proof of "dumping"; when pressed for details he said the matter was a "shakedown" and he was going to withdraw. The conversation as testified to by Mr. Haven, corroborated by his associates and not denied by petitioner, was substantially as follows: "Petitioner: "Frankly, Mr. Haven, I consider this matter a 'shake down', nevertheless, Mr. Haven, my clients are very insistent in this matter and I would advise you to make some sort of settlement with them. . . . " Mr. Haven: "Mr. Barton, you are withdrawing from the matter. If my clients want to communicate with your clients how can I do it?" Petitioner: "If you want to communicate with them, just communicate with me."

Petitioner had no affidavits or proof of "dumping" and his statements to Mr. Haven were false. On November 10th he again telephoned Mr. Haven and asked if the company, or Mr. Castor, had determined to settle the matter, stating that his clients were getting very insistent and would cause trouble, which statement was also untrue. Mr. Haven replied that his client would not settle and that if he heard anything further about the matter, petitioner could "have a fight". Three days after this conversation Mr. Castor of said oil company, received an anonymous letter, of some length, referring to the "little Gasolene scandel" of which he had "been warned" and stating that the full story would be given to the press, with details and "plenty of affidavits to back up everything that goes into one of the leading newspapers", unless the matter was straightened out. The letter further said:

"We have also been reliably informed, that after it becomes public, the Standard Oil of California will file suit for damages, your mr. Haven may be interested in the publicity? however if you intend to look into this matter, get in touch with Mr. Daniel Barton (attorney) 704 Mkt., otherwise the story will go to the Press after fortyeight hours have elapsed, from the time you receive this."

There was no testimony to show that petitioner either wrote or had knowledge of this letter. It was not connected up with him in any way whatsoever.

Petitioner's explanation of his conduct was that he was trying to ascertain if his clients, or some of the major oil companies whom he did not represent, had a claim against the Castor company.

The charge against petitioner was of violation of his oath and duties as an attorney (secs. 278, 282 and 287, Code Civ. Proc.) and of the commission of acts involving moral turpitude and dishonesty (subd. 5, sec. 287, *supra*). The local administrative committee concluded that in persistently attempting to obtain money from said oil company, through misrepresentation and dishonesty, when employed for the sole purpose of protecting the public by requiring said company to discontinue "dumping", and when told by his clients that they neither had been damaged nor wanted money, and after, according to his own words, he had concluded it was a "shakedown", petitioner was not only guilty as charged, but also that his conduct constituted an attempt to extort money as said crime is defined in sections 518, 519 and 524 of the Penal Code.

Said committee further concluded that there were no extenuating circumstances in the case; that the plan was boldly conceived and persistently pursued until reported to the police; that the offense was violative of public interest and such as to bring criticism and odium upon the legal profession and that petitioner had conclusively shown that he was unfitted for the practice of his profession.

We have set forth the findings and conclusions of the local committee at some length because we are in accord with them and they express our own analysis of this cause.

Petitioner's application for review is in the nature of a plea for leniency. He fears that disbarment will deprive him of his livelihood and urges that our examination of the record must convince us that the evidence is wholly insufficient to warrant punishment so severe.

In this view we cannot concur. Petitioner has twice heretofore been disciplined by this court and has on each occasion been accorded leniency. In *Barton* v. *State Bar*, 209 Cal. 677 [289 Pac. 818], the board of governors of The State Bar recommended that petitioner be suspended from

the practice of law for three months, but this court adopted the recommendation of the local administrative committee that he merely be reprimanded. In *Barton* v. *State Bar,* 213 Cal. 186 [2 Pac. (2d) 149], where petitioner was guilty of serious misconduct in connection with a bankruptcy proceeding, and disbarment was recommended, this court again extended leniency by ordering a six months' period of suspension. Thereafter petitioner sought to challenge the effectiveness of the decision (*In re Barton,* 54 Fed. (2d) 810).

After considering carefully the full record in the present case, together with petitioner's prior record, in order to determine his fitness to continue in practice (*Marsh* v. *State Bar, ante,* p. 75 [39 Pac. (2d) 403]), we can reach no conclusion but that his disbarment is warranted.

It is therefore ordered that petitioner, Daniel Barton, be and he is hereby disbarred from practicing law in all of the courts of this state, and his name is stricken from the roll of attorneys of the state of California.

Langdon, J., Curtis, J., Seawell, J., Shenk, J., Thompson, J., and Waste, C. J., concurred.