[Crim. No. 4711.   Second Dist., Div. Three.   Mar. 17, 1952.]

THE PEOPLE, Respondent, v. AUGUSTE HENRI FRANQUELIN, Appellant.

Morris Lavine for Appellant.

Edmund G. Brown, Attorney General, and Frank Richards, Deputy Attorney General, for Respondent.

VALLÉE, J.—Defendant was convicted by a jury of attempted extortion. He appeals from the judgment and the order denying his motion for a new trial. As grounds for reversal he urges (1) it was not shown that Bette Cole, the prosecuting witness whose testimony given at the preliminary examination was read at the trial, could not with due diligence be found within the state; (2) the evidence is insufficient to support the verdict; and (3) the court erred in instructions given and refused.

Penal Code, section 686, provides that in a criminal prosecution the defendant is entitled "to be confronted with the witnesses against him, in the presence of the court," except that the testimony of a witness given at the preliminary examination of the defendant may be read in evidence upon its being satisfactorily shown to the court that he "cannot with due diligence be found within the state."

On February 5, 1951, trial of the action was set for March 20, 1951. On March 20, 1951, the trial was continued to April 3, 1951, and commenced on that date. ▨ On February 9, 1951, Corrigan, a process server, received a subpoena for Bette Cole. He commenced looking for her that day. He first went to 3230½ Sunset Boulevard, Los Angeles, the address which Bette had given at the preliminary examination. Not finding her at that address, he went to a downstairs store and talked to a Mr. Walsh who told him Bette "had moved some little time ago"; that he had not heard from her, and had no idea where to find her. Corrigan then ascertained that Bette had not left a forwarding address with the post office department. He mailed a card to her at 3230 Sunset Boulevard and the card came back. He next asked the Los Angeles Police Department to try to find her and gave them a subpoena. The police department had not been able to find her up to the

day of trial. Corrigan checked all the large hospitals, the registry of voters, the Retail Merchants' Association, and the jails. He did not find any record of her. He then secured the assistance of Lovell, another process server in the district attorney's office. He located Bette's sister, Lois Cortez, in Wilmington who told him she had no idea where Bette was or where she could be found. During the course of his search Corrigan saw a photograph of Bette at the police department, found that Bette Cole was not her name, endeavored to learn her true name, and interviewed several police officers who were also looking for her. Corrigan was unable to find Bette.

Lovell received a subpoena for Bette on March 6, 1951, and secured her photograph from the police department. He did not find her at the Sunset Boulevard address, and then talked to a police officer who told him he might find her through her sister Lois Cortez. He found Lois on March 7. Lois had no knowledge of Bette's whereabouts and had little knowledge of Bette since the latter's arrival in California. At various times Lovell called the Lincoln Heights jail in Los Angeles, the county jail, South Gate police station, and the Huntington Park police station to see if she "had been booked or picked up," without success. On April 2, Lovell went to the Wilmington police station, and with police officers went to the "519 Club," a place he "had information she had visited quite frequently in the past." He went to about every bar on Main and Fifth Streets in Los Angeles trying to locate her. In most of these places he was told she had not been seen for a month. He also made inquiry at Pacific Coast Collection Agency, a national credit agency, and the California Unemployment Compensation Agency. Lovell was unable to locate her.

Police Officer Phillips knows Bette personally. He testified: she was formerly engaged in prostitution; she had not been a waitress; prior to the trial he made many attempts to find her, checking various locations which she supposedly frequented; he knew her automobile and endeavored to locate it; he alerted several vice squads to be on the lookout for her and gave them pictures of her; the squads checked numerous "night spots." Phillips was unable to locate her.

Lois Cortez testified: Bette was 24 years old and is her sister; she last saw her a few days after the preliminary which was held on January 12, 1951; since that date she had not heard from her directly or indirectly and had not seen her, had no information as to her whereabouts; she had

received mail from her parents; they had not indicated they had heard from Bette. Lois also testified: she did not know what Bette was doing for a living at the time of the preliminary; she had no idea where Bette "might be."

■ The rule governing our consideration of the question whether the court erred in holding that a sufficient showing had been made that Bette could not with due diligence be found within the state is stated in *People* v. *Cavazos*, 25 Cal.2d 198, 200 [153 P.2d 177]: "The question of what constitutes due diligence to secure the presence of a witness which will authorize the reading to the jury of testimony taken at the preliminary hearing of the case, is largely within the discretion of the trial court, and depends upon the facts of each particular case. The decision of a trial judge on the question of diligence and of the propriety of receiving or rejecting the evidence will not be disturbed on appeal unless it appears that there was an abuse of discretion. [Citations.] The problem is primarily for the trial court, and its solution will not be disturbed if there is evidence of substantial character to support its conclusion. [Citations.]"

■ It is patent no abuse of discretion is shown. The search was extensive and as thorough as reasonably could be expected under the circumstances. There is evidence of a substantial character to support the conclusion of the trial court and its determination may not be disturbed.

*People* v. *McDonald*, 66 Cal.App.2d 504 [152 P.2d 448], and *People* v. *Kuranoff*, 100 Cal.App.2d 673 [224 P.2d 402], relied on by defendant, are not helpful. In those cases no diligence was shown and it was held the court abused its discretion in permitting testimony given at the preliminary to be read. As the court said in the Cavazos case, whether diligence has been shown depends on the facts of each particular case.

Bette was living in an apartment in Los Angeles in September, 1950. Defendant, whom she did not know, went to the apartment, knocked on the door, told her he was a police officer and if she did not let him in, he would have her arrested. Bette let him in. Defendant then told her he was on the vice squad; that he wanted to have sexual intercourse with her, and he would not bother her if she went ahead. Bette, nervous and afraid, had sexual intercourse with him. Lois was in the kitchen and defendant had not seen her. After the act defendant went into the kitchen, saw Lois, stepped back hurriedly, and said to Bette, "Why

didn't you tell me someone else was in the apartment? You play square with me and I will play square with you.''

About two days later defendant approached Bette on the street as she was walking to her apartment. He told her he wanted to come up; that he was working on a narcotic case. In the apartment defendant said he wanted to have sexual intercourse with her. She consented.

About a week later defendant telephoned Bette and asked her to go to a movie with him. When she refused, he said he would like to come up, which he did. Bette had sexual intercourse with him again. A few days later the same thing occurred.

Bette believed defendant was a police officer and consented to the acts of intercourse because she was afraid. She did not receive any money from him.

Defendant next saw Bette on January 3, 1951. In the interim she had moved to an apartment at 3230½ Sunset Boulevard, Los Angeles. She had not told defendant she had moved. Defendant knocked on the door and said, ''This is an old friend of yours.'' Bette recognized him and asked, ''What do you want?'' Defendant said he wanted to come in and talk to her about something very important. He went in and told her a vice officer friend of his had been ''kicked off the force'' two weeks previously, ''and that this man wanted some money''; that his friend demanded $250 to not bother her, and he would not bother her; that if he did not get the money he was going to turn her in, and ''he would take the money for the man.'' He told Bette that if he did not get the money, she would have trouble about her past. Bette told him she did not have the money but would try to get it. Defendant told her he would transact the business, would ring her doorbell the next evening when it got dark, would then go and sit in her car parked in the lot and wait for her there.

When defendant left, Bette telephoned a friend and told her what had happened. That evening a police officer came to her apartment and she told him defendant had demanded $250. The next day the police installed a Sound mirror, bug and switch in Bette's car. That evening she parked her car in the lot next to the apartment; four officers were with her in the apartment; the doorbell rang; Bette, with $250 on her which she had received from the officers, went downstairs where defendant was waiting, and they proceeded to her parked car. While they were seated in the car she tried to

turn on the bug, but she could not reach the switch because defendant embraced her. Defendant told her, " 'I had quite a time convincing my partner that the deal was all right, because,' he said, 'he could not understand how I got up to the apartment so easy.' And he said, 'But I told him that it was all right, and he seemed willing that the deal would go through.' And he said, 'I told him that I got $500.00 and I will keep two hundred and fifty for myself, and then he, probably, won't bother you.' " Bette asked defendant for a cigarette; he said he did not have any, but would get some for her. He got out of the car and was walking toward the street when he was arrested. Bette had not given him the money.

Bette testified she "last worked as a prostitute" about two years prior to the preliminary but was not engaged in prostitution at that time, had violated no law, and had committed no crime.

"Extortion is the obtaining of property from another, with his consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or under color of official right." (Pen. Code, § 518.) Fear, such as will induce extortion, may be induced by a threat to accuse the individual threatened of any crime or to impute to him any crime. (Pen. Code, § 519.) Every person who attempts, by means of any threat such as is specified in section 519, to extort money from another is guilty of a public offense. (Pen. Code, § 524.) ▮ To commit the offense of attempt to commit extortion there must be a specific intent to commit the crime, and a direct ineffectual act done toward its commission. (*People* v. *Miller*, 2 Cal.2d 527, 530 [42 P.2d 308].) The effect produced on the person to whom it is made is immaterial. (*People* v. *Robinson*, 130 Cal.App. 664, 668 [20 P.2d 369].)

▮ The jury was warranted in inferring that defendant, from his first encounter with Bette, placed her in fear that he would arrest her and accuse her of prostitution. He told her if she did not let him in, he would have her arrested. He told her he was on the vice squad and if she had intercourse with him, he would not bother her. A reasonable inference is that he had the specific intent to obtain money from her from the beginning and that his visits were merely laying the ground work to that end. The jury was warranted in concluding that defendant threatened to arrest Bette and accuse her of prostitution unless she paid him $250.

It is true, as defendant argues, that preparation alone is not sufficient. The act "must reach far enough toward the accomplishment of the desired result to amount to the commencement of the consummation." (*People* v. *Miller*, 2 Cal. 2d 527, 530 [42 P.2d 308].) In the Miller case the court quoted from 1 Wharton's Criminal Law, 12th ed., page 280: "'There must be some appreciable fragment of the crime committed, and it must be in such progress that it will be consummated unless interrupted by circumstances independent of the will of the attempter.'" Preparation is devising or arranging the means or measures necessary for the commission of the offense. The attempt is the direct movement toward the commission after the preparations are made. Defendant did more than planning or preparation. Up to the time he rang the doorbell on the night he was to receive the money it might be argued that his acts were equivocal. They were not thereafter. Preparation had left off and execution had commenced. From that time on fragments of the crime were committed; defendant's movements, without any equivocality, were made to complete his design. He did all acts necessary to commit extortion except receive the money. His acts were such as would have apparently resulted, in the usual course of natural events if they had not been interrupted by circumstances independent of him, in receipt of the money. (*People* v. *Miller*, 2 Cal.2d 527, 531 [42 P.2d 308].) He failed to get the $250 solely because of the interference of the officers.

Manifestly it cannot be said that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached by the jury. (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778].)

The court gave the following instruction to the jury: "Every person who attempts to extort money or other property from another by means of a threat to accuse him, or any relative of his, or member of his family, of any crime is guilty of a crime.

"The phrase 'to extort money or property' from a person, as that phrase is used in the law just stated and as it applies to this case, means to obtain the money or property from him with his consent, but to induce that consent by fear, and to induce that fear by a threat of a kind like that just specified.

"The difference between actual extortion and attempt to extort obviously lies in the results obtained; and if one uses a threat such as I have specified with the intent and for the

purpose that I have specified, he is guilty of attempt to extort, although he fails to induce any fear in the mind of the other person or fails to obtain any money or property as a result of the attempt.

"A threat to accuse another of a crime as a means to extort money is just as unlawful, if the person threatened is guilty of such a crime, as if he or she were not guilty of such a crime."

Defendant assigns error in the giving of the third paragraph of the foregoing instruction and argues it is not a correct nor a full definition of "attempt." He also suggests it probably led the jury "to convict on evidence of mere preparation or intention, and not an 'attempt.'" There was no error. The court defined an "attempt" to commit a crime, specifically told the jury it is necessary to distinguish between mere preparation and the actual commencement of the criminal act, and that mere preparation is not sufficient to constitute an "attempt."[1] The instruction criticized is a particular instruction on the law of an "attempt to extort." It does not purport to define or to set forth the elements comprising an "attempt." These elements were covered in separate instructions. The instruction given was proper. (*People* v. *Lavine*, 115 Cal.App. 289, 300 [1 P.2d 496]; *People* v. *Robinson*, 130 Cal.App. 664, 668 [20 P.2d 369]; *People* v. *Goldstein*, 84 Cal.App.2d 581, 587 [191 P.2d 102].)

█ The court refused to give an instruction requested by defendant with respect to the elements of an attempt to commit a crime, the concluding paragraph of which read: "If you find that the defendant did not receive the $250.00, you must acquit the defendant." The paragraph quoted is obviously an erroneous statement of the law. (*People* v. *Goldstein*, 84 Cal.App.2d 581, 586-587 [191 P.2d 102].) Defendant was charged with an attempt to extort, not extortion.

---

[1] "An attempt to commit a crime consists of two elements, namely, a specific intent to commit the crime, and a direct but ineffectual act done toward its commission.

"In determining whether or not such an act was done, it is necessary to distinguish between mere preparation, on the one hand, and the actual commencement of the doing of the criminal deed, on the other. Mere preparation, which may consist of planning the offense or of devising, obtaining or arranging the means for its commission, is not sufficient to constitute an attempt; but acts of a person who intends to commit a crime will constitute an attempt where they themselves clearly indicate a certain, unambiguous intent to commit that specific crime, and, in themselves, are an immediate step in the present execution of the criminal design, the progress of which would be completed unless interrupted by some circumstance not intended in the original design."

The court refused to give an instruction requested by defendant which read: "You are instructed that in every crime there must exist a union, or joint operation, of action and intent." There was no error. The subject matter was fully covered.[2] Further, the offense of attempt to commit extortion requires a specific intent and the general instruction proffered would have tended to mislead and confuse the jury. (See *People* v. *Womble,* 67 Cal.App.2d 885, 890 [155 P.2d 838].)

Defendant complains of the refusal of the court to give an instruction he requested which read: "If you believe that Betty Cole arranged to bring about the arrest of the defendant solely because she was angry at him, you must acquit the defendant." There was no evidence that Bette Cole "arranged to bring about the arrest of the defendant" because she was angry at him. The defense was that defendant had never seen nor had any dealings with her before the night of the arrest. It would have been error to have given the instruction which had no application to the facts of the case. (*People* v. *Eggers,* 30 Cal.2d 676, 687-688 [185 P.2d 1].)

The cause was fairly tried and the jury fully and correctly instructed. There is no merit in the appeal.

As no appeal lies from a verdict, defendant's appeal therefrom is dismissed.

The judgment and the order denying the motion for a new trial are affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied March 28, 1952, and appellant's petition for a hearing by the Supreme Court was denied April 14, 1952.

---

[2] "In the case of certain crimes it is necessary that in addition to the intended act which characterizes the offense, the act must be accompanied by a specific or particular intent without which such a crime may not be committed.

"Thus in the crime of attempted extortion a necessary element is the existence in the mind of the perpetrator of the specific intent to obtain money by means which under the law would constitute extortion, and unless such intent so exists that crime is not committed."