**Hugh Wendell MacDONALD, Appellant,**

v.

**James A. MUSICK, Appellee.**

**No. 22781.**

United States Court of Appeals,
Ninth Circuit.

April 20, 1970.

Rehearing Denied June 2, 1970.

**374**

Hillel Chodos (argued), Beverly Hills, Cal., for appellant.

Oretta D. Sears (argued), Deputy Dist. Atty., Cecil Hicks, Dist. Atty., Santa Ana, Cal., for appellee.

Before DUNIWAY, HUFSTEDLER and KILKENNY, Circuit Judges.

DUNIWAY, Circuit Judge:

Habeas corpus. The District Court denied the writ. We reverse. MacDonald has exhausted his state remedies.

On January 9, 1965, MacDonald was driving his car in Newport Beach, California. He was stopped by the local police and ultimately arrested and taken to the police station. There he was booked as violating section 23102(a) of the Vehicle Code of California, which makes it a misdemeanor for "any person who is under the influence of intoxicating liquor * * * to drive a vehicle upon any highway." On January 11, 1965, a complaint was filed in the Municipal Court of the Newport Beach Judicial District charging him with that offense. On January 14, 1965, MacDonald pled not guilty and demanded a jury trial, which was set for January 26.

On January 26, the prosecutor moved to dismiss the charge. The court asked if MacDonald would stipulate that there was probable cause for his arrest. MacDonald declined, and the prosecutor withdrew the motion. In California, only the court may dismiss a criminal action. (Cal.Pen.C. § 1385.) Had the action been dismissed, the dismissal would have been a bar to further prosecution for the offense charged. (Id. § 1387.) Trial was set for February 2.

On February 2, the prosecutor moved under Cal.Pen.C. § 1009 for leave to file an amended complaint, adding a second count charging MacDonald with resisting arrest, Cal.Pen.C. § 148, also a misdemeanor. The motion was opposed, and was fully argued on February 3. The court granted the motion. MacDonald was then rearraigned and pled not guilty to both charges. Trial before a jury was had, beginning February 9, and on February 11, the jury acquitted MacDonald on the drunk driving charge and found him guilty of resisting arrest.

There was considerable conflict in the evidence as to the events leading to MacDonald's arrest, and particularly as to whether there was probable cause for the arrest, as well as about what happened thereafter. We need not analyze the evidence, however, because of the ground upon which we decide the case. Nor need we consider MacDonald's claim that he was convicted under a statute that makes it illegal to resist an unlawful arrest (Pen.C. § 834a), and that such a conviction violates his federal constitutional rights.

The reason for the prosecutor's withdrawing his motion to dismiss the drunk driving charge and for then seeking to file an amendment to add the resisting arrest charge, is made clear by the rec-

ord in the state case. At the hearing on the motion for leave to file an amended complaint, on February 3, there were a number of stipulations. MacDonald proposed to call as witnesses six deputies in the District Attorney's office. The prosecutor stipulated:

"It is so stipulated that all these Deputies indicated either displeasure with the case or that it was a weak case or that they would not care to prosecute it."

It was further stipulated that one deputy said:

" 'It appears that the police department has a hard on against this defendant and are out to get him.' or words to that effect, close quote."

It was also stipulated that a police lieutenant said:

"that he would stipulate that they did in fact delete the second charge of resisting arrest from their record, did in fact reduce the bail, and would stipulate that a police official, I think it was a policewoman, did state to the defendant's witness, 'You will be happy to know that the resisting arrest charge has been dropped.' "

In support of the motion for leave to amend, the prosecutor said:

"Normally a defendant will stipulate to probable cause, and there is only one reason, let's face it, for that stipulation, so that the defendant cannot sue the police department. This particular defendant would not stipulate to probable cause, which made it obvious, at least, there was an inference drawn, that perhaps here is a defendant that does have in mind suing the police department.

\* \* \* \* \* \*

"It seems to me that it is the duty of the Deputy District Attorney, in addition to prosecuting criminals, to protect the police officers, and in so protecting the police officers, it seems to me, after evaluating the facts, any Deputy District Attorney worth his salt would have at that point included any offense, obviously, in the report on

which the defendant could have been convicted."

 We strongly disagree. It is no part of the proper duty of a prosecutor to use a criminal prosecution to forestall a civil proceeding by the defendant against policemen, even where the civil case arises from the events that are also the basis for the criminal charge. We do not mean that the prosecutor cannot present such a criminal charge. What he cannot do is condition a voluntary dismissal of a charge upon a stipulation by the defendant that is designed to forestall the latter's civil case. The situation is made no better by the fact that here the record indicates that it was the court that asked MacDonald whether he would stipulate. Rather, it makes it worse. It brings the court to the aid of the prosecutor in coercing the defendant into agreeing to what amounts to a forfeiture of his civil rights. Nor can the prosecutor, because of failure to obtain the demanded stipulation, then introduce another charge in the hope of defeating the possible civil action of the defendant.

The impropriety of the prosecutor's conduct requires little exposition. In California, extortion is defined as "the obtaining of property from another, \* \* induced by a wrongful use of \* \* \* fear, or under color of official right." (Cal.Pen.C. § 518.) There is no doubt that a cause of action for personal injuries is property. Franklin v. Franklin, 1945, 67 Cal.App.2d 717, 155 P.2d 637. Section 519 of the same code defines "fear" as "induced by a threat \* \* \* 2. To accuse the individual threatened \* \* \* of any crime \* \* \*." See Barton v. State Bar of California, 1935, 2 Cal.2d 294, 40 P.2d 502; Bridge v. Ruggles, 1927, 202 Cal. 326, 260 P. 553; People v. Sanders, 1922, 188 Cal. 744, 207 P. 380; People v. Beggs, 1918, 178 Cal. 79, 172 P. 152; People v. Sexton, 1901, 132 Cal. 37, 64 P. 107; Morrill v. Nightingale, 1892, 93 Cal. 452, 28 P. 1068; People v. Franquelin, 1952, 109 Cal.App. 2d 777, 241 P.2d 651; People v. Goldstein, 1948, 84 Cal.App.2d 581, 191 P.2d

102; People v. Phillips, 1935, 10 Cal.App. 2d 457, 51 P.2d 1120; People v. Powell, 1934, 1 Cal.App.2d 222, 36 P.2d 201.

▮▮ The Canons of Ethics have long prohibited misuse of the criminal process by an attorney to gain advantage for his client in a civil case. ABA Code of Professional Responsibility, 1969, provides in section DR 7–105, p. 88: "(A) A lawyer shall not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter." See Barton v. State Bar of California, *supra*. In this respect, we can see no difference between public prosecutors and other lawyers. See ABA Code, *supra*, §§ EC 7–13, 7–14, pp. 79–80, DR 7–103(A), p. 87. See also Opinion No. 131, Virginia State Bar Council, Oct. 25, 1963, Virginia Bar News, December 1963, p. 3; Report of the President's Commission on Crime in the District of Columbia, 1966, p. 338; Dixon v. District of Columbia, 1968, 129 U.S.App.D.C. 341, 394 F.2d 966. In such a case as this, if the policemen were sued, the public entity employing the policemen would be obliged, upon their request, to defend them or at least to pay any judgment against them or to indemnify them. Cal.Gov't Code § 825 ff.

▮▮ We are aware, however, that not everything that may happen to a defendant in a state court is ground for issuance of a writ of habeas corpus by a federal court, no matter how much we may disapprove. It must appear that the petitioner " * * * is in custody in violation of the Constitution or laws or treaties of the United States * * *." (28 U.S.C. § 2241(c) (3)). We think that this is such a case.

In N.A.A.C.P. v. Button, 1963, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405, the Supreme Court held that the right of a group having a common interest in the civil rights of its members to band together for the purpose of initiating litigation in the field of civil rights is protected by the First Amendment, made applicable to the states by the Fourteenth. The First Amendment protects "the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." The Court regarded litigation as one form of petition for redress. This concept was somewhat expanded in Brotherhood of Railroad Trainmen v. Virginia, 1964, 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89. There, while group activity was involved, its purpose was to assist individual members and their families in prosecuting personal injury claims. The Court invoked the First Amendment "guarantees of free speech, petition and assembly" (p. 5, 84 S.Ct. p. 1116). It also said:

"A State could not, by invoking the power to regulate the professional conduct of attorneys, infringe in any way the right of individuals and the public to be fairly represented in lawsuits authorized by Congress to effectuate a basic public interest."

This is a reference to the fact that the suits brought by union members were generally brought under the Federal Employers' Liability Act (45 U.S.C. §§ 51–60) and the Safety Appliance Act (45 U.S.C. §§ 1–43). Thus one ground of the decision is that the state may not interfere with the assertion of a federal claim.

The same principles were applied in United Mine Workers, etc. v. Illinois State Bar Assn., 1967, 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426, where the Court emphasized that the protections of the First Amendment are not limited to cases in which the contemplated litigation can be characterized as political, and indeed "are not confined to any field of human interest." (p. 223, 88 S.Ct. p. 357.)

Finally, in Johnson v. Avery, 1968, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718, the Court re-emphasized, in a habeas corpus setting, the federal protection of the right to seek redress from the federal courts, striking down certain state prison rules deemed to hamper that right. In so doing, it cited similar cases dealing with state limitations upon access to state courts, such as Smith v. Bennett,

1961, 365 U.S. 708, 81 S.Ct. 895, 6 L. Ed.2d 39; Long v. District Court, 1966, 385 U.S. 192, 87 S.Ct. 362, 17 L.Ed.2d 290; and Griffin v. Illinois, 1956, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891. These cases all involved indigent prisoners, and were decided on equal protection grounds under the Fourteenth Amendment. But they do demonstrate the constitutional importance of access to the courts. This court, in DeWitt v. Pail, 9 Cir., 1966, 366 F.2d 682, 685–686, held that depriving a state prisoner of access to the state courts violated his right to due process under the federal Constitution, thus giving rise to a cause of action under the Civil Rights Act.

In this case, MacDonald asserts that his arrest was unlawful, that he had a right to resist, and that as a result of his doing so he was badly beaten by the police. We express no views as to the merits of these claims. But MacDonald, in addition to whatever rights he had under the law of California, had a claim to a federal right under the Civil Rights Act, 42 U.S.C. § 1983. Morgan v. Labiak, 10 Cir., 1966, 368 F.2d 338; Stringer v. Dilger, 10 Cir., 1963, 313 F.2d 536; cf. Wiltsie v. Calif. Dept. of Corrections, 9 Cir., 1969, 406 F.2d 515; York v. Story, 9 Cir., 1963, 324 F.2d 450; Cohen v. Norris, 9 Cir., 1962, 300 F.2d 24. See also Monroe v. Pape, 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492; Screws v. United States, 1945, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495. Thus in this case, the attempt, by imposing the stipulation as a condition to the dismissal of the drunk driving charge, was to hamper MacDonald in asserting, by civil action, both state and federal civil rights. And the revival of the resisting arrest charge was the bludgeon behind the attempt.

The order appealed from is reversed and the matter is remanded with directions to grant the writ of habeas corpus.

KILKENNY, Circuit Judge (dissenting):

I believe the approach of the majority is wholly unrealistic. On many occasions, in the criminal field, the prosecutor must make a decision on whether he will go forward with the prosecution on the original charge or add another count. On some occasions, he may feel that the overall evidence is somewhat weak, even though he believes there is probable cause for the arrest. If, under these circumstances, the charge is dismissed, some person, including the arresting officer, might well be faced with a civil action, even though there was probable cause for the arrest. Of course, this was true long before the passage of the Civil Rights Act. The latter merely gives to the plaintiff, in some instances, a choice of forums.

The civil rights actions, under state law, include among others, those for false arrest and false imprisonment. It is my firm belief that those in charge of prosecution of criminal actions have a duty to protect, if probable cause exists, arresting officers from both state or federal civil actions. We are not here concerned with a coerced plea of guilty. Appellant had his day in court and was found guilty of resisting arrest. The fact that he was acquitted on the original charge does not signify that there was no probable cause for the arrest. It merely means that the state failed to prove guilt beyond a reasonable doubt.

My thinking processes do not shudder at the portrait of the state judge asking appellant if he would agree to probable cause for the arrest. Many, many exceptionally able trial judges use this procedure to determine the appropriate action to take on the motion to dismiss. If appellant had so stipulated, the judge might well have denied the motion to dismiss. Beyond question, he would have inquired, in depth, of the prosecutor as to the appropriateness of a dismissal under these circumstances. The prosecutor, when appellant refused to agree to probable cause, was well within his rights in asking for a withdrawal of the motion to dismiss. In my view, there is nothing constitutionally objectionable in the district attorney's statement that it was his duty to include in the complaint

any offense of which the appellant might be convicted. I am persuaded that the majority has erroneously raised a simple procedural act of the prosecutor to the dignity of constitutional dimensions.

Moreover, I would resolve the other issues against the appellant and affirm the judgment of the district court.