[L. A. No. 17425.   In Bank.—July 18, 1940.]

GUS STEIN, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Louis R. Baker for Petitioner.

Philbrick McCoy and Claude Minard for Respondent.

EDMONDS, J.—The Board of Governors of The State Bar has recommended that the petitioner, an attorney at law, be disbarred, and the present proceeding was brought to review that determination.

The decision of the board followed a hearing before a local administrative committee upon the charge of appropriating the money of a client. The petitioner did not appear at this hearing but was represented by counsel. The committee found that some time after he met Pearl Garber, the complaining witness, he was employed as an attorney to probate the estate of her deceased mother. He also drew a will for her. Because of such employment the petitioner became acquainted with Miss Garber's affairs. He induced her to give him $730 to be invested in an oil enterprise upon representations that Harry J. Keeley, who occupied offices adjoining that of the petitioner, was then drilling a well and "she would get more than double her money in return". Mr. Keeley was not then drilling any well and he was not soliciting or accepting money from anyone.

Other findings are that the money was paid to petitioner in amounts ranging from $70 to $150 and was appropriated· by petitioner to his own use. He agreed to deliver stock or other evidence of her interest in the oil well, but also stated that his personal notes were the best security for her investment and that it was not necessary that she receive any stock. The record shows that several notes in favor of Miss Garber were executed by the petitioner and delivered to her and that he repaid $80 of the amount received from her.

In another transaction, the petitioner obtained $7.50 from Miss Garber upon the representation that a bank was foreclosing upon the oil well and equipment in which her money was invested and that this amount was needed to file an injunction suit on her behalf. Subsequently, he requested $50 to place a keeper in charge of the oil well, but she refused to give him this amount. No suit was filed and petitioner appropriated the $7.50. Upon numerous occasions, Miss Garber requested the petitioner to account for the various sums of money paid to him and to furnish her with some security for her investment, but none of these requests was complied with.

Upon these findings the local committee recommended that the petitioner be disbarred. He then applied to the board of governors for leave to present additional evidence and for a hearing *de novo*. This application was denied, and the findings and conclusions of the local committee were adopted by a resolution which included the statement that the board, in fixing the degree of discipline took into consideration the petitioner's past record, which included a public reproval administered in 1930.

Petitioner now contends that the board erred in not permitting a hearing *de novo* or allowing the presentation of additional evidence because the findings of the committee are not supported by the evidence; there is insufficient evidence to support either the findings or the conclusions; there is additional evidence available which is material to all of the issues; and the denial of the right to cross-examine the complaining witness constitutes prejudicial error, as does also the examiner's reference to the petitioner's previous citation by the board.

The findings objected to are relatively unimportant as they touch upon the main issues only incidentally and can properly be criticized only as including slight inaccuracies in statement. For example, the committee found that the petitioner was employed by Miss Garber to probate the estate of her deceased mother. The petitioner shows that her brother was the executor and argues that the legal services must have been rendered to him. Although this is technically correct, the testimony clearly indicates an employment of the petitioner because of his acquaintance with Miss Garber, and that she considered he was representing her in the probate proceedings.

The evidence which more directly concerns the petitioner's acts clearly shows, without any contradiction whatever, that the petitioner took Miss Garber's money under representations that it would be invested in an oil well. Her testimony in this regard is supported by that of Mr. Keeley, who testified that, upon request of the petitioner, he had endorsed a note or notes made by the petitioner in favor of Miss Garber and also that upon Mr. Stein's request he telephoned Miss Garber and told her "everything was all right and the money would be forthcoming". His only explanation for doing this was that petitioner "was a jovial kind of boy and I thought he was all right".

The petitioner's complaint that the cross-examination of Miss Garber was erroneously limited is based upon the committee's ruling sustaining an objection to the following question asked of Miss Garber: "Did you know that during this time Mr. Stein had been separated from his wife and he had incurred a number of obligations for the support of his child and borrowed money from you for this purpose?" The objection was sustained upon the ground that it was outside the issues.

The petitioner now asserts that the question was asked to show that the money which Miss Garber gave him was to be used to pay these obligations. But in her testimony, both upon direct and cross examination, she positively stated that the petitioner secured the money from her for investment and that she would not have made a "personal loan" to him. For example, the following question was asked her immediately after the criticized ruling: "Isn't it true that you knew Mr. Stein was not going to use this money to invest in an oil well?" Her reply was: "That I knew Mr. Stein was not going to use this money to invest in an oil well? Of course not, that is not true; that is what he took it from me for, that is what he was going to invest it for me for". In view of these and other answers given in response to questions which covered the entire scope of her dealings with the petitioner, the ruling complained of does not constitute prejudicial error.

In an affidavit filed in support of his application for a hearing *de novo* before the board, petitioner states that he had been under the care of a doctor for several months preceding the hearing and was then in ill health. For that reason, he alleged, he did not appear before the committee. He stated

in his affidavit that because there had been a settlement between him and Miss Garber relative to the promissory notes, he believed she would testify differently at the hearing. He also asserted that he could prove the money was loaned to him personally to pay, among other things, ''expenses for boy's school creditors''; that he had made numerous interest payments of 10 per cent per month upon the notes; that he paid this high interest because he felt he was helping to contribute to Miss Garber's support and was desirous of helping her; and that although several of his notes had been paid by respondent's father, who advised her not to make further loans, she continued to give him money.

But the petitioner did not disclose who would testify to these facts. Furthermore, upon an application for a further hearing, the evidence proposed to be offered should be stated with particularity and its materiality and relevancy must clearly appear. The affidavit of the petitioner falls far short of these requirements. Also, the petitioner made no explanation to the board of governors why this evidence was not introduced at the original hearing before the committee. Although the petitioner was not then present, his attorney stated that it was the petitioner's desire that the hearing proceed without him. There was no request for a continuance nor any statement to the effect that counsel was surprised by any of the testimony given. Under these circumstances, the affidavit does not state any grounds for a hearing *de novo*.

Before the local committee, the examiner for The State Bar said that the petitioner had been cited in August, 1930, to answer a charge upon which a trial committee recommended disbarment. It was pointed out by the committee that this observation was outside the order to show cause, and it directed the attorneys to confine themselves to the issues. No further mention was made of the former proceeding although the committee was entitled to know the facts in connection with the petitioner's previous professional difficulties. For in considering the discipline to be imposed, it is proper for an examining committee, or the board of governors, to consider an attorney's past conduct in connection with the charges then pending against him for the purpose of determining whether he ''is imbued with the essential qualities of integrity and honesty, or for any bearing it may have upon his motive or otherwise upon the question of the measure of

discipline to be applied." (*Kennedy* v. *State Bar,* 13 Cal. (2d) 236 [88 Pac. (2d) 920].)

The recommendation of the board of governors being fully supported by the evidence, it is ordered that the name of Gus Stein be stricken from the roll of attorneys at law of this state.

Shenk, J., Curtis, J., and Carter, J., concurred.