[S. F. No. 16541. In Bank.—May 2, 1941.]

SPENCER G. PRIME, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Ernest Spagnoli for Petitioner.

Hartley Peart and Claude Minard for Respondent.

THE COURT.—This is a proceeding to review a recommendation of the Board of Governors of The State Bar of California made on October 25, 1940, that petitioner be disbarred. On April 15, 1940, a notice to show cause was issued by Local Administrative Committee No. 5 for the City and County of San Francisco, charging petitioner with professional misconduct in violating his oath and duties as an attorney at law as prescribed by sections 6067, 6068 and 6103 of the Business & Professions Code, Rule 9 of the Rules of Professional Conduct (commingling of clients' funds with his own), and in the commission of acts involving moral turpitude and dishonesty as mentioned in section 6106 of the Business & Professions Code. The gist of the charge was that petitioner appropriated to his own use $21.87 which had been given to him by his client for the alleged purpose of paying the premium on a fire insurance policy on his client's property. The local administrative committee found the charge to be true and recommended suspension for one year. The Board of Governors of The State Bar adopted the findings of the committee, but because of prior disciplinary proceedings against petitioner, recommended his disbarment. Petitioner claims in his petition, that the evidence is insufficient to support the findings, that the penalty imposed is unduly harsh, and that the Board of Governors should not have

considered the prior disciplinary proceedings against him in fixing the penalty.

Petitioner was admitted to practice in California on February 24, 1919. The complaining witness, E. Vellis, had been petitioner's client for some time prior to the commencement of this proceeding. He owned property which was encumbered, the security being held by the Home Owners' Loan Corporation, and upon which there was fire insurance coverage. The premium on the policy was $26.87. On May 23, 1939, the policy being about to expire, Vellis gave $10 to petitioner, for which petitioner gave him a receipt acknowledging that it was received on account of premium on Dubuque Fire & Marine Insurance Company fire insurance policy and stating that there was a balance of $16.87 due thereon. On July 14, 1939, Vellis gave said sum of $16.87 to petitioner for which he received a receipt from petitioner acknowledging that it was "In Re: Home Owners' Loan Corporation Acct. bill Insurance—Fire." Petitioner paid $5 of the above-mentioned sums to the insurance company, and appropriated the balance thereof to his own use. He has not repaid the same to his client. Petitioner obtained policies of fire insurance for Vellis from the Liverpool & London & Globe Insurance Company, and Pearl Assurance Company, Ltd., but both of those policies and the original policy with the Dubuque Company were cancelled for nonpayment of premium. Petitioner had rendered quite extensive professional services for Vellis at the time the above-mentioned sums were received, and he testified that he had not been paid for his said services. Vellis' testimony to the contrary was evasive and not convincing. There is no substantial conflict in the evidence supporting the above-mentioned facts. Petitioner in his answer to the notice to show cause admitted that he received the sum of $10 from Vellis, and that it was to be used to pay an insurance premium for him, but claimed the payment was not to be made at that time (May 23, 1939), but rather on July 24, 1939. Petitioner also admitted that he received from Vellis the sum of $16.87, but claimed that Vellis consented that said sums be applied on a fee for professional services rendered by petitioner. Petitioner testified that the receipts were given acknowledging the receipt of the money for insurance premium upon Vellis' request as he wished to use them to show his stepdaughter that the insurance premium was paid, and to obtain from her the rent she was alleged to have

collected from Vellis' tenant; and that after they were given, Vellis agreed that petitioner could retain the funds on account of his fee. Vellis denied such an arrangement. During the time of and after receiving the sums petitioner was ill. He claimed he thought an attorney he had employed was handling the dispute with Vellis for him and would repay Vellis out of a fee to be received in a case he had turned over to said attorney. No fee was ever paid in the transferred case, and the attorney employed by petitioner failed to corroborate petitioner's testimony that said attorney had promised to pay Vellis any portion of the fee to be received by him. Half-hearted attempts were made by petitioner to settle with Vellis. Petitioner however denied that such attempts constituted an admission of any liability, but were made only to avoid trouble in view of his physical condition. Petitioner asserted that he agreed to arrange for the insurance coverage, and obtain time for the payment of the premium after the expiration of the initial period of time for which credit was extended in paying the premium, but he admits that no premium was ever paid except the sum of $5 on account thereof.

Petitioner contends that Vellis is a "confessed liar" and therefore his testimony should be disregarded. As his basis for that contention he relies on the following portion of Vellis' testimony: "The Examiner: Q. Where did you get the $16.87 (referring to the above-mentioned second payment)? A. From my pocket. Q. How did it get in your pocket? A. I no tell him (presumably referring to petitioner) I said 'That is last money, I have just car fare to go home. This money I get from my stepdaughter' . . . she don't give it to me. I tell a lie because he bother me so much for the whiskey." This can hardly be said to make a "confessed liar" of Vellis. It does not support petitioner's testimony that the receipts were given to Vellis in order that he could exhibit them to his stepdaughter and obtain rents she had collected from his tenant. Rather, it may be said to show a complete disclosure by Vellis of what was said and done.

The evidence is sharply conflicting on the main issues, and we would be inclined to accept the testimony of petitioner as controlling, if it were not for the delivery to Vellis of the receipts acknowledging the receipt of the money for an in-

surance premium coupled with the amounts in the two receipts being identical with the amount of the premium on the Dubuque policy of insurance. In the face of this evidence we are not inclined to upset the findings of the local administrative committee. Its members had the opportunity of observing the witnesses and were therefore in a better position to judge as to their credibility.

 However, there are mitigating circumstances. Vellis neither reads nor writes English well, and it appears from his testimony that in many instances he did not understand the questions put to him. Many of his answers were not responsive to the questions. There is a possibility that he also misunderstood the arrangement between petitioner and himself with relation to the ultimate disposal of the sum of $26.87 received by petitioner. If such were the case, we would have nothing more than a *bona fide* and honest mistake as to the nature of the transaction, which would not, of course, be a basis for disciplinary action. In view of such possibility, we believe that from the record standing alone, the recommendation of the local administrative committee for a one year suspension from practice should have been adopted rather than disbarment as recommended by the Board of Governors.

However, in making its recommendation as to the penalty to be imposed, the Board of Governors took into consideration the prior record of petitioner. A private reproval was administered to the petitioner by the board on April 21, 1939. With that proceeding this court had nothing to do and the nature of the charge on which it was based does not appear from the record now before us. On November 27, 1939, Local Administrative Committee No. 2 for the City and County of San Francisco notified petitioner of a charge against him of failing to use the funds of a client for the purpose received. That proceeding resulted in a recommendation of the Board of Governors for a one year's suspension from practice, which was approved by order of this court on June 27, 1940; no petition for review by this court was asked by petitioner in that proceeding. The one year's suspension last-mentioned was to commence at the termination of a suspension of petitioner ordered by this court on December 12, 1939, for non-payment of State Bar dues. The misappropriation of funds in the above-mentioned proceeding occurred between August

24, 1939, and October 23, 1939, this being a few months after the occurrence of the events here involved. On April 19, 1940, the Board of Governors made its recommendation for the suspension of petitioner for misconduct arising out of said charge of misappropriation of funds. Petitioner urges that inasmuch as the misconduct culminating in the order of suspension of June 27, 1940, occurred a month or two after the misconduct here involved, such is not a *prior* record of conviction which may be considered in fixing the penalty in the instant proceeding. It is to be noted that just four days before the time the Board of Governors made its recommendation for the suspension above-mentioned, the citation was issued in the Vellis case by the local administrative committee. Undoubtedly the board did not have that citation in mind when it made such recommendation for suspension. It could not have considered the Vellis' complaint as a part of the prior record of petitioner, but it did take into consideration the above-mentioned private reproval of April 21, 1939. ■ The rule with respect to the consideration of other acts of misconduct of an attorney in fixing the penalty to be imposed was considered by this court in the recent case of *Kennedy* v. *State Bar,* 13 Cal. (2d) 236, 240 [88 Pac. (2d) 920], where it was said:

"The board is entitled to consider the past conduct as well as that which is directly under investigation, for whatever weight it may have in determining the question whether the attorney is imbued with the essential qualities of integrity and honesty, or for any bearing it may have upon his motive or otherwise upon the question of the measure of discipline to be applied." The essence of the rule is that note may be taken of other acts of misconduct of the attorney which bear upon the question of his integrity, honesty and moral fitness to practice law. That being the case, it seems clear that the time such other acts of misconduct occurred with relation to the time of occurrence of the particular offense under consideration, is immaterial except to the extent that remoteness may lessen its weight and significance. If it appears that the attorney has been guilty of conduct indicating a lack of those qualities essential to the maintenance of the dignity and integrity of the profession and the protection of the public, before or after the misconduct presently involved, such factors are certainly pertinent on the issue of what disci-

plinary measures will be necessary to accomplish the end in view. It is indicative of the probable future course of conduct of the attorney and the strength and stability of his moral concepts. Cases such as the one here involved would rarely arise for the reason that there would seldom be conviction for a later offense prior to a conviction for a former one. Petitioner relies upon authorities holding that in criminal proceedings the penalty may be made more severe only in cases in which the other offenses are committed before the offense for which the accused is being tried. (16 Cor. Jur. 1341.)

But this is not a criminal proceeding. The important factor is whether the attorney lacks the necessary and proper moral qualifications to continue in practice. (*Marsh* v. *State Bar*, 2 Cal. (2d) 75 [39 Pac. (2d) 403].)

Nevertheless, in view of the possibility of a misunderstanding between Vellis and petitioner as to the ultimate disposal of the sums received, the illness and financial difficulties of petitioner, the smallness of the amount involved, the fact that the prior suspension of petitioner was for acts occurring in close proximity to the acts here involved, and the other circumstances of the case including the recommendation for a suspension of one year by the local administrative committee who had an opportunity to observe the petitioner and the witnesses, we believe that the end sought to be accomplished by disciplinary measures will be attained by the suspension of petitioner and he is hereby suspended from practicing law for the period of one year commencing at the expiration of the year's suspension ordered by this court on June 27, 1940.