**In the Matter of the Disbarment of Morris LAVINE, Esquire to Practice as an Attorney before this Court.**
**Misc. ——.**

United States District Court
S. D. California, Central Division.

July 30, 1954.

Morris Lavine, Los Angeles, Cal., pro se.

MATHES, District Judge.

Morris Lavine is a member of the State Bar of California and of the Bar of this Court. He was first admitted to practice in this Court on October 26, 1918, was disbarred on August 10, 1932, and was reinstated on March 21, 1936.

His appearances over the years in many causes here have made known to the Judges of this Court his methods and practices in the conduct of litigation, as well as his ability and industry. He is, in short, one of the older and more experienced members of the Bar of this Court.

On the afternoon of Monday, July 26, 1954, Mr. Lavine commenced in this Court a bankruptcy proceeding entitled "In the Matter of The Los Angeles County Pioneer Society, a corporation, Debtor", and numbered "In Bankruptcy No. 62149 WM".

As attorney for the Pioneer Society, Mr. Lavine at that time filed and presented to this Court a "Debtor's Petition under Title XI, § 322 for Plan of Arrangement", previously prepared by him, which represented to this Court *inter alia:*

(1) that the Pioneer Society is a nonprofit corporation organized under the laws of California;

(2) that the Society had "liquidated its physical assets, leaving a

total amount in excess of $95,000 in cash in its possession * * *; that thereafter * * * objections were made to the distribution of the funds of the Pioneer Society to its members, and the funds were ordered impounded and later transferred to another society as trustee *for* the *. *. * Pioneer Society's funds"; (3) that the Pioneer Society "became obligated for various expenses and debts * * * for its attorneys' fees, for accountants' fees and for other indebtedness * * *";

(4) that the Pioneer Society "is not insolvent but has no money under its possession * * *";

(5) that the Pioneer Society "proposes the following Plan of Arrangement:

"I

"That this Court appoint a Trustee to take possession of all of *its funds and assets which are now in the possession of the Historical Society* of Southern California as Trustee;

"II

"That this Court pay each and every one of its creditors 100% in full out of such funds;

"III

"That thereafter the funds be turned over to the * * * Pioneer Society * * * that the * * * Pioneer Society, after the payment of its debts, *be reinstated in possession of all of its assets and funds* * * *;

"IV

"* * * The debtor proposes that the trustee appointed by this Court shall be *paid out of the funds taken over by the trustee from the Historical Society* * * *.

*"Unsecured Claims*

"(a) The debtor proposes to satisfy these claim[s] 100% out of the funds to be taken over by the trustee from the Historical Society * *.

"The debtor proposes to obtain the money, which is in excess of $95,000 from stocks and bonds which the Historical Society has bought *as Trustee for the * * * Pioneer Society* and which will be turned over to the trustee appointed by this Court * * *.

"Dated July 20, 1954.

"Los Angeles County Pioneer Society By Frank Y. Pearne, its President By Morris Lavine, Attorney for the Los Angeles County Pioneer Society." [Italics added.]

With this "Debtor's Petition" Mr. Lavine also signed and filed a "Petition for Order Extending Time to File Debtor's Schedules, Statement of Affairs and List of Executory Contracts" wherein the Pioneer Society "respectfully represents and shows" that it "is desirous of expediting * * *" the Debtor Proceedings herein for the purpose of placing *its assets* in the custody of the Federal Court to enable the debtor to meet its obligations prior to a threatened order of dissolution which is being threatened by the State Court of California to be put into effect on July 27, 1954 [the following day], and to stay the State Court's proposed action * * * [and] does not have sufficient time within which to get up schedules in bankruptcy, the statement of affairs in bankruptcy, and a statement of the executory contracts * * *." [Italics added.]

At the same time Mr. Lavine also signed and filed a "Petition for Order to Show Cause Restraining Proceedings in the Superior Court * * *", wherein the Pioneer Society represents that it is "a party in a lawsuit in the Superior Court of the State of California in and for the County of Los Angeles, being No. 562960, entitled 'In the Matter of Los Angeles County Pioneer Society, a Corporation, In the Process of Voluntary Winding Up', wherein in a voluntary proceeding to wind up its affairs the Los Angeles County Pioneer Society revoked the said proceeding and petitioned the

court for revocation of its previous proceedings to voluntarily wind up its affairs and to allow it to continue, and to allow it to be restored to its funds and meet its obligations. * * *

"That the said Superior Court of the State of California in and for the County of Los Angeles *has announced* that it will not permit the Los Angeles County Pioneer Society so to do, and will, on July 27th, 1954, at the hour of 10:00 a. m., dissolve the Society on application of Edmund Sumner, Deputy Attorney General, and the Historical Society *which claims to have an interest in the trust funds.*

"That great and irreparable damage will be done to the debtor unless there is a stay of the proceedings. That no harm can come from a stay for the reason that *all of the funds claimed by the debtor are at the present time in the possession of the Historical Society, as trustee * * *.* That the said funds consist of approximately $95,000 in cash, which the Historical Society has reported is invested in stocks and bonds, and the said funds have been so invested for several months according to the report filed in the Superior Court.

"That this proceeding and this petition is being taken in the best interest of the creditors and the debtor and for the preservation and protection *of the assets of the debtor and to prevent untimely inroads therein.*" [Italics added.]

Upon the representations set forth in these petitions, Mr. Lavine induced this Court to issue an "Order to Show Cause", prepared by Mr. Lavine, in material part as follows:

"Upon * * * application of Morris Lavine, attorney for the debtor herein * * * It Is Hereby Ordered that The Superior Court, Edmund Sumner, Deputy Attorney General, and the Historical Society of Southern California, be and appear before this Court on Monday, August 2nd, 1954, at the hour of 10:00 o'clock a. m. * * * and then and there show cause, if any they have, or either of them has, why disposition of those certain trust funds *constituting the assets*

*of the debtor* estate herein, *which are now in the possession of and under the control of the * * *. Historical Society* of Southern California and consist of stocks and bonds and cash in the approximate sum of $95,000 should not be permanently restrained; and

"It Is Further Ordered that the respondents Superior Court, Edmund Sumner and the Historical Society and its officers be and they are hereby temporarily restrained from disposing of any of the aforesaid funds or proceeding in the aforesaid Superior Court action pending and until the hearing of this Order to Show Cause and further order of this Court." [Italics added.]

Upon the representations set forth in the petitions prepared and signed by him as attorney, Mr. Lavine induced this Court to assert its paramount jurisdiction in bankruptcy and issue an injunction, also prepared by him, restraining the State Court as follows:

"To The Superior Court * * * And To Judge James H. Pope, Judge * *:

"A petition having been filed by Los Angeles County Pioneer Society under Chapter XI of the Bankruptcy Act [11 U.S.C.A. § 701 et seq.], and good cause appearing therefor, you are herewith restrained from taking any further action or proceeding in any wise in the matter of the Los Angeles County Pioneer Society, a Corporation, Superior Court No. 562960, until further orders of this Court. Dated: July 26, 1954."

Mr. Lavine also prepared and likewise induced this Court to issue an injunction directed to the Historical Society as follows:

"It Is Hereby Ordered that the Historical Society, as the Trustee of *funds turned over to it as Trustee for the* Los Angeles County *Pioneer Society,* be and it is hereby restrained from in any way spending, hypothecating, disposing of, pledging the same, or entering into any order or obligation for the disbursement of the same until further orders of this court." [Italics added.]

He also prepared and likewise induced issuance of a third injunction addressed

"To The Farmers & Merchants National Bank * * *, as Custodian of the Funds and Securities of the * * * Pioneer Society, which are held by the Historical Society * * * as Trustee", restraining disposition of such funds and securities.

On the following day, July 27, 1954, Edmund Sumner, Esquire, Deputy Attorney General of California, and Oscar Lawler, Esquire, attorney for the Historical Society, appeared *ex parte* and asked to be heard on motions to vacate all the orders. The calendar did not permit a hearing that day. However these attorneys then gave the Court a citation to In re Los Angeles County Pioneer Society, 40 Cal.2d 852, 257 P.2d 1.

Thereafter this Court on its own motion ordered a hearing to be held on Wednesday afternoon, July 28, at which time the Deputy Attorney General of California, the attorney for the Historical Society and Mr. Lavine appeared.

Inquiry was then made of Mr. Lavine as to the indebtedness of the Pioneer Society. The creditors were then disclosed by him for the first time as follows:

(1) Claim of one Mason for typing ............... $ 3.50
(2) Claim of a florist for flowers ............. 6.21
(3) Claim of the President of the Pioneer Society for postage and photostatic copies of papers ............... 11.00
(4) Claim of a surety company for premium on a bond ............. 13.50
(5) Claim of Finkel & Finkel, accountants ...... 380.00 and
(6) Claim of Morris Lavine, for attorney's fees and expenses .......... 13,000.00

Further inquiry developed that all of these claims had previously been presented to the State Court in the dissolution proceedings and had been by the State Court disallowed. But the petitions prepared by Mr. Lavine and filed in this Court do not disclose these facts.

The Wednesday afternoon hearing was recessed until Friday morning, July 30, when the three attorneys named again appeared. Meantime this Court had the opportunity to study the petitions and orders in the bankruptcy proceedings in the light of the earlier State Court proceedings involving the Pioneer Society. From the records presented on Wednesday by the Deputy Attorney General of California and counsel for the Historical Society and from a study of the opinion of the Supreme Court of California in the Pioneer Society case, 40 Cal.2d 852, 257 P.2d 1, this Court learned, among others, the following facts:

(a) In the language of Justice Traynor: "On May 19, 1950, the court entered judgment that Pioneer was a charitable corporation, that its assets were dedicated to charitable purposes, that it had abandoned its trust and was threatening to divert the assets to the private benefit of its members, and that appointment of a new trustee was necessary. * * * On October 18, 1950, after a further hearing, the court appointed Historical trustee and ordered the impounded assets turned over to it. The present appeals are from this order." 257 P.2d at page 4.

"The conclusion that Pioneer held its assets for charitable purposes disposes of Pioneer's contention that the trial court should not have allowed the Attorney General to become a party to the dissolution proceedings. The Attorney General is a necessary party to proceedings affecting the disposition of assets of a charitable trust * * * and when assets are held by a charitable corporation, as here, the duty to protect such assets is expressly placed upon the Attorney General by the Corporations Code. Section 10207." [Id. at page 6.]

(b) "The next question to be determined is whether the trial court was justified in appointing a successor trustee. * * * As previously pointed out, substantial evidence supports the find-

ing of the trial court that Pioneer held its assets for charitable purposes." [Ibid.]

"Pioneer's course of conduct throughout these proceedings thus demonstrates that it has abused and abandoned its trust and amply supports the determination of the trial court that a new trustee should be appointed." Id. at page 7.

(c) "Pioneer contends that Historical is not qualified to act as trustee of the assets. Even if it is assumed that this question can be raised by Pioneer * * * the selection of Historical as trustee is supported by the record. Historical is a charitable corporation first organized in 1883 and incorporated in 1891. It has 492 members and is actively engaged in collecting and preserving material of historic interest in Southern California. The order appointing Historical trustee provides that it shall hold the transferred assets as trustee for the same purposes as those expressed in Pioneer's articles. If Historical does not faithfully perform its duty as trustee, the Attorney General will institute appropriate proceedings to correct the noncompliance." Id. at pages 9–10. "The order is affirmed." Id. at page 10.

*This opinion of the Supreme Court of California affirming the Superior Court's 1950 order appointing the Historical Society as successor trustee of all the assets of the Pioneer Society was filed May 5, 1953.*

The Pioneer Society's petition for a rehearing was denied on May 28, 1953. Justice Carter dissenting said: "A majority of this Court has declared that Pioneer is a charitable organization and that it may not be permitted to correct its so-called deviation from its articles of incorporation; *that its assets must be turned over to a successor trustee— the Historical Society.* * * * Even if Pioneer is a charitable organization * * * it has the right to abandon its dissolution proceedings and correct any deviation from its articles of incorporation. *To refuse to permit such corrective action is,* in my opinion, *to deprive Pioneer of its property* without due pro-

cess of law under both the federal and state constitutions." Id. at page 15; italics added.

Justice Schauer also dissented, asserting that the 1953 decision of the Supreme Court "punishes Pioneer for instituting the lawful dissolution proceeding *by stripping it of its assets and giving them to another;* * * * refuses even to permit Pioneer * * * to discontinue the dissolution proceeding and to carry out the trust which the court adjudges to exist." Ibid.; italics added.

(d) Throughout the appeal in the State Supreme Court Mr. Lavine was the attorney for the Pioneer Society. An appeal later taken by Mr. Lavine on behalf of the Pioneer Society to the Supreme Court of the United States was dismissed on November 16, 1953. See Los Angeles County Pioneer Society v. Historical Society of Southern Cal., 1953, 346 U.S. 888, 74 S.Ct. 139.

The Canons of Professional Ethics have long provided: "In the judicial forum the client is entitled to the benefit of any and every remedy and defense that is authorized by the law of the land, and he may expect his lawyer to assert every such remedy or defense. But it is steadfastly to be borne in mind that the great trust of the lawyer is to be performed within and not without the bounds of the law. The office of attorney does not permit, much less does it demand of him for any client, violation of law or any manner of fraud or chicane". Canon 15, 62 A.B.A.Rep. 1110–1111 (1937).

"The conduct of the lawyer before the Court and with other lawyers should be characterized by candor and fairness. * * * It is unprofessional and dishonorable to deal other than candidly with the facts * * * in drawing affidavits and other documents, and in the presentation of causes." Canon 22, Id. at 1112–1113. "Stirring up strife and litigation is not only unprofessional but it is indictable at common law. It is disreputable to hunt up * * * causes of action * * * in order to be employed to bring suit. * * * A duty to the

public and to the profession devolves upon every member of the Bar having knowledge of such practices upon the part of any practioner, immediately to inform thereof to the end that the offender may be disbarred." Canon 28, Id. at 1115.

"The lawyer must decline to conduct a civil cause * * * when convinced that it is intended merely to harass or to injure the opposite party or to work oppression or wrong." Canon 30, Id. at 1116. "The responsibility for advising as to questionable transactions, for bringing questionable suits, for urging questionable defenses, is the lawyer's responsibility. He cannot escape it by urging as an excuse that he is only following his client's instructions." Canon 31, Ibid.

For more than four generations it has been the express *statutory* duty of every attorney practicing in California "To employ, for the purpose of maintaining the causes confided to him such means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law." Calif.Bus. & Prof.Code § 6068(d), formerly Calif.Code Civ.Proc. § 282(4).

Moreover, for a like period it has been the law of California that "Every attorney is guilty of a misdemeanor who * * * is guilty of any deceit * * * or consents to any deceit * * * with intent to deceive the court * * *." Id. § 6128, formerly Calif.Penal Code, § 160.

Since 1938 the Federal Rules of Civil Procedure have provided that: "Every pleading * * * shall be signed by at least one attorney of record in his individual name, whose address shall be stated. * * * The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay." Fed.Rules Civ.Proc. Rule 11, 28 U.S.C.A. And since 1939, Rule 11 and other Federal Rules of Civil Procedure have been applicable in proceedings under the Bankruptcy Act. See General Order 37, 11 U.S.C.A. following § 53.

Reading and rereading the petitions and orders submitted by Mr. Lavine in the light of the opinion of the Supreme Court of California in the Pioneer Society case, 1953, 40 Cal.2d 852, 257 P.2d 1, is reminiscent of the old pastime of "How Many Faces Can You Find in this Picture?" The more closely one looks the more faces he sees.

The chicane and deceit practiced by Mr. Lavine here is of two kinds—concealment and nondisclosure, and positive misrepresentation, varying in degree from clever half-truth to affirmative falsehood. Only a few specific instances will be noted here, since it is not worth the space required to mention all that have come to attention up to this writing.

Mr. Lavine affirmatively misrepresented to this Court, not once but throughout the petitions and orders he prepared in the bankruptcy proceedings here, that the Historical Society is "Trustee of funds turned over to it *as Trustee for the * * * Pioneer Society.*" (Italics added.)

In view of the admitted facts of record, concealed by Mr. Lavine from this Court in the bankruptcy proceedings, it was premeditated audacity to set forth in the petition to this Court a "plan of arrangement" whereby it is solemnly proposed to satisfy the indebtedness of the Pioneer Society "100% out of the funds to be taken over by the [bankruptcy] trustee from the Historical Society. * * * The debtor proposes to obtain the money, which is in excess of $95,000 from stocks and bonds which the Historical Society has bought *as trustee for the * * * Pioneer Society* and which will be turned over to the trustee appointed by this court."

In the "Debtor's Petition" the status of the Pioneer Society is represented as being, not a public charitable trust, but merely a "non-profit organization."

The facts, as revealed in the opinion of the California Supreme Court, are these: "On May 19, 1950, the [trial] court entered judgment that Pioneer was a charitable corporation, that its assets were dedicated to [public] charitable purposes * * * [and] correctly determined that all of the assets of Pioneer were given and received for [public] charitable purposes and held by Pioneer for those purposes." 257 P.2d at page 4. Indeed it now appears that as early as 1921 the California courts had adjudged the Pioneer Society to be a charitable corporation. See In re Dol's Estate (Los Angeles County Pioneer Society v. Flint et al., as Executors), 1921, 186 Cal. 64, 198 P. 1039. Mr. Lavine failed to disclose the facts as to either of these adjudications.

Apart from the affirmative misrepresentations, then, the petitions and orders presented by Mr. Lavine in the bankruptcy proceedings abound with practiced concealment. Nowhere is there to be found disclosure of (1) the fact that all the assets previously held by the Pioneer Society had been adjudged by the State Court in 1950 to constitute a public trust fund for charitable purposes; or (2) the fact that the State Court had rejected all claims asserted by Mr. Lavine and the Pioneer Society's other alleged creditors against that trust fund; or (3) the fact that the Historical Society had been appointed successor trustee of all the Pioneer Society's assets; or (4) the fact that the State-Court adjudication "stripping * * * [Pioneer] of its assets" and vesting in Historical as successor trustee all of Pioneer's title thereto had occurred almost four years ago; or (5) the fact that the California Supreme Court more than a year ago affirmed the 1950 judgment taking from Pioneer all title to "its assets."

As a famous lawyer observed more than a century ago: "Oh, what a tangled web we weave when first we practice to deceive!" Sir Walter Scott, Marmion, VI (1808).

In stark contrast to the pleadings and orders he presented, Mr. Lavine's "explanations" at the bar upon the two hearings before this Court were revealingly frank. Faced with the harsh alternative of claiming unbelievable ignorance, incompetence or inexperience, or of attempting to "bluff it through", he chose the latter course. A few quotations from the reporter's transcript will serve to indicate Mr. Lavine's knowledge and state of mind:

"The Court: * * * The file does not show anything about these claims or any of these proceedings in the state court, and I have looked at this report in 257 P.2d 1, of the appeal.

"Mr. Lavine: Yes, your honor.

"The Court: But I just got the impression that here was an organization all of whose troubles seemed to stem from the fact that it had $95,000.00 and no creditors and somebody was trying to get that $95,000.00.

"Mr. Lavine: Well, that is exactly the situation, your Honor. Your Honor has gathered the situation exactly.

"The Court: Very well. Now, the state court took jurisdiction of the res, did it not?

"Mr. Lavine: That is correct.

"The Court: And appointed a successor trustee?

"Mr. Lavine: That is correct." [Rep.Tr. 7–28–54, p. 7, lines 5–21.]

"The Court: And you filed a claim over there, did you?

"Mr. Lavine: I filed a claim.

"The Court: Was it disallowed?

"Mr. Lavine: Disallowed.

"The Court: And you tell me there is no appeal from it?

"Mr. Lavine: I don't think there is any appeal from that order as of the present status, no, your Honor. * * *" [Id. p. 8, lines 6–12.]

"The Court: Do you recommend this procedure?

"Mr. Lavine: Yes, your Honor. It is the only proceeding I can see where they can absolve themselves of the obligations which they have and which are pending and from which seemingly they couldn't extricate themselves and would be dissolved with debts, although they were the beneficiaries of a substantial sum of money and increased it substantially during their lifetime." [Id. p. 10, lines 16–23.]

"The Court: Are you not telling me now that this Society has no assets and certain liabilities?

"Mr. Lavine: No, I am telling you that they have assets which we believe belong to them, which have been removed from their custody and control.

"The Court: By final judgment of the state court?

"Mr. Lavine: By final judgment of the state court." [Id. p. 18, line 21—p. 19, line 2.]

"The Court: * * * Judge Pope * * * appointed a successor trustee which took over all the funds of this debtor here, did he not?

"Mr. Lavine: Yes, your Honor. * * *

"The Court: And that judgment has long since become final.

"Mr. Lavine: That's right." [Id. p. 20, line 15—p. 21, line 1.]

"The Court: How long has the judgment been final?

"Mr. Lavine: The judgment has been final since, well, sometime in 1953, I believe, your Honor." [Id. p. 21, line 25—p. 22, line 2.]

"The Court: By what possible process of reasoning can the [Pioneer] Society today challenge the successor trustee's title to those funds?

"Mr. Lavine: Well, they don't have title to the funds. They are trustees, your Honor. They do not have title.

"The Court: Don't trustees have title to the res?

"Mr. Lavine: As trustees, yes, they have. That's right, as trustees. * * *

"The Court: As between that successor trustee and this debtor here, this petitioner, the Los Angeles County Pioneer Society, the former has final adjudication of title in its favor; isn't that right?

"Mr. Lavine: That is correct, your Honor. * * *

"The Court: Didn't the state court reject those claims?

"Mr. Lavine: The state court has rejected those claims, your Honor." [Id. p. 23, line 3—p. 24, line 7.]

"The Court: Anything further?

"Mr. Lavine: No, your Honor. I would like to say this. We are in this position: If your Honor, of course, feels that we could not succeed in anywise here, we want to terminate this matter as well as possible. * * *

"The Court: Anything further?

"Mr. Lavine: Nothing further, your Honor." [Id. p. 25, line 22—p. 26, line 19.]

"The Court: The judge of the Superior Court back in 1950 put title to these funds, all the assets, title of all the assets of Pioneer were placed in the hands of the successor trustee Historical.

"Mr. Lavine: That is right.

"The Court: That judgment placing title as trustee in Historical has long since become final, has it not?

"Mr. Lavine: That is correct, your Honor.

"The Court: What else is there to talk about? How could this court * * * in utter defiance of the State law, hold that this debtor has any possible claim to these assets,—

"Mr. Lavine: Well, we—

"The Court: Title to which has been placed in Historical by a judg-

ment of the State Court, affirmed by the highest court of the State, and review denied by the Supreme Court of the United States; long since been final. How could this court under any conceivable theory disturb that title?

"Mr. Lavine: It's only title as trustee, and—

"The Court: That's the only title that Pioneer ever had, or could possibly claim—

"Mr. Lavine: That is right; but certainly had a right to re-petition for its return." [Rep.Tr.7-30-54, p. 40, line 12—p. 41, line 9.]

What more need be said? What less could be said? Mr. Lavine could not deny the 1950 State-Court judgment. Neither could he deny knowledge of its finality or assert ignorance of its effect.

Mr. Lavine was able through palpably groundless proceedings, in a few brief minutes to: (a) invoke the supervening bankruptcy jurisdiction of this Court, see Gross v. Irving Trust Co., 1933, 289 U.S. 342, 344–345, 53 S.Ct. 605, 77 L.Ed. 1243; (b) induce this Court, in the exercise of its paramount bankruptcy jurisdiction, summarily to enjoin the State Court from proceeding on the morrow in a matter which was of no concern to this Court; (c) induce this Court to issue a false and groundless order to show cause directing the State Court and others to appear and show cause "why disposition of those certain trust funds *constituting the assets of the debtor estate herein * * ** should not be permanently restrained;" (d) induce this Court to sign an order prepared by him summarily enjoining "the Historical Society, as the Trustee of funds turned over to it *as Trustee for the * * * Pioneer Society*," from disposing of funds to which the Pioneer Society admittedly had no possible legal claim; and (e) induce this Court to sign an order of injunction prepared by him and addressed: "To the * * * Bank * * * as custodian of *the Funds of the Los Angeles County Pioneer Society *  *  *.*" [Italics added.]

Three injunctions, two of them restraining the State Court, and all of them grounded upon nothing but the quicksands of incredibly callous chicane and deceit—writs *de deceptione!*

Rule 11 of the Federal Rules of Civil Procedure provides that: "If a pleading * * * is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false * * *." Fed.Rules Civ.Proc. rule 11, 28 U.S.C.A. The orders issued in the bankruptcy proceedings upon the pleadings signed by Mr. Lavine have been vacated, the pleadings have been stricken "as sham and false" within the meaning of Rule 11, and the proceedings have been dismissed *sua sponte.*

This Court now makes the finding that the petitions prepared by Mr. Lavine and filed in the bankruptcy proceedings on July 26, 1954, were prepared and signed and filed and presented to this Court by Morris Lavine in willful violation of and with deliberate intent to defeat the purpose of Rule 11 of the Federal Rules of Civil Procedure, by deceiving this Court and bringing about a flagrant abuse of the injunctive process.

Rule 11 further provides that: "For a wilful violation of this rule an attorney may be subjected to appropriate disciplinary action. Similar action may be taken if scandalous or indecent matter is inserted." Fed.Rules Civ.Proc. rule 11, 28 U.S.C.A.

In United States, to use of and for Benefit of Foster Wheeler Corp. v. American Surety Co., D.C.E.D.N.Y.1938, 25 F.Supp. 225 the Court observed: "The purpose of the signature of 'at least one attorney of record in his individual name' is to hold the attorney of record who signs his individual name to strict accountability as is provided in Rule 11 * * *." 25 F.Supp. at page 226.

As one of the leading commentators on the Rules has explained: "Rule 11 * * * is designed to lay upon counsel

a definite moral and professional obligation in drawing up and presenting pleadings, motions and other papers. His signature is a certificate of good faith. * * * A reputable attorney cannot file sham or frivolous pleadings and motions, or insert scandalous or indecent matter. An attorney who does resort to such tactics should be disciplined * * *." 2 Moore, Federal Practice § 11.02, pp. 2103–2104 (2d Ed. 1948).

Prior to the Federal Rules of Civil Procedure there was no established means whereby to discipline an attorney for filing a sham and false pleading, except by formal rule or order to show cause in a plenary proceeding. See Ex Parte Robinson, 1873, 19 Wall. 505, 86 U.S. 505, 22 L.Ed. 205; Bradley v. Fisher, 1871, 13 Wall. 335, 354–355, 80 U.S. 335, 354–355, 20 L.Ed. 646; Ex Parte Bradley, 1868, 7 Wall. 364, 74 U.S. 364, 19 L.Ed. 214; United States v. Hicks, 9 Cir., 1930, 37 F.2d 289, 292; cf. In re Patterson, 9 Cir., 1949, 176 F.2d 966; Barnes v. Lyons, 9 Cir., 1911, 187 F. 881.

■ The purpose of Rule 11, in my opinion, is to permit summary disciplinary action "for a wilful violation of this rule". Otherwise the last two sentences of Rule 11 are but surplusage.

The metamorphosis of Rule 11 lends support to this view. As Barron and Holtzoff point out in their authoritative work: "Rule 10 in the May 1936 Preliminary Draft, p. 20, became Rule 11 in the April 1937 draft. * * * The May 1936 Preliminary Draft, p. 20, contained the provision that: 'For a wilful violation of this rule, an attorney may be held in contempt of court or subjected to other appropriate disciplinary action.' Whereas the Final Report, p. 11, dropped the phrase 'held in contempt of court' as did the earlier April 1937 Report, p. 29. For discussion of contempt of court by attorneys in filing pleadings, see Gavit, The New Federal Rules and State Procedure, 1939, 25 A.B.A.J. 367, 371. The author states in part: 'The cases have consistently held a lawyer is guilty of misconduct if he files a pleading without a reasonable expectation that the allegations can be proved * * *.'" 1 Barron and Holtzoff, Federal Practice and Procedure, p. 574 n. 3 (Rules Ed. 1950).

The alternatives in the earlier drafts of Rule 11, providing that for a willful violation of the rule the attorney may either "be held in contempt of court or subjected to other appropriate disciplinary action", and the mandate of Rule 1 that all the Rules "shall be construed to secure * * * just, speedy, and inexpensive determination * * *", point to the considerations of reason and policy which prompt the holding here that the last two sentences of Rule 11 are not mere surplusage reciting long-established substantive law, but are procedural and provide summary means for "appropriate disciplinary action" in cases of willful violation of Rule 11.

When an attorney wilfully violates Rule 11 by signing and filing a pleading which he knows to be sham and false, he ipso facto places himself upon notice that he may summarily be subjected by the Court to "appropriate disciplinary action."

There remains to consider what is "appropriate disciplinary action", within the meaning of Rule 11, for Mr. Lavine in this case.

■ While this Court is not bound by state rules or state action either as to admission to practice or as to disbarment, it is proper to follow and uphold the policy and rules of the State in such matters, absent compelling considerations which argue a contrary result. See Selling v. Radford, 1917, 243 U.S. 46, 37 S.Ct. 377, 61 L.Ed. 585; In re Barton, D.C.N.D.Cal.1931, 54 F.2d 810; Barton v. State Bar, 1931, 213 Cal. 186, 2 P.2d 149; Id., 1935, 2 Cal. 2d 294, 40 P.2d 502.

■ Disciplinary proceedings are in no sense criminal in nature. They are proceedings peculiar to themselves, sui generis. Herron v. State Bar, 1944, 24 Cal.2d 53, 147 P.2d 543, 550; Prime v. State Bar, 1941, 18 Cal.2d 56, 112

P.2d 881; Marsh v. State Bar, 1934, 2 Cal.2d 75, 39 P.2d 403.

As has been repeatedly held: " ' "This is a special proceeding of a civil nature, and the rules applicable to criminal cases do not apply." ' " Fish v. State Bar, 1931, 214 Cal. 215, 4 P.2d 937, 940; In re Vaughan, 1922, 189 Cal. 491, 209 P. 353, 354, 24 A.L.R. 858.

As pointed out by the Supreme Court of California in Marsh v. State Bar:

"It must * * * be noted that although the word 'punishment' is frequently used, the discipline of an attorney is not punitive in character. * * * The purpose of such a proceeding is to determine the fitness of an officer of the court to continue in that capacity, and it has been said the disbarment of attorneys is not intended for the punishment of the individual, but for the protection of the courts and the legal profession." 1934, 2 Cal. 2d 75, 79, 39 P.2d 403, 405.

"The important factor is whether the attorney lacks the necessary and proper moral qualifications to continue in practice." Prime v. State Bar, supra, 18 Cal. 2d 56, 112 P.2d at page 884.

■ The court should "consider the past conduct as well as that which is directly under investigation, for whatever weight it may have in determining the question whether the attorney is imbued with the essential qualities of integrity and honesty, or for any bearing it may have upon his motive or otherwise upon the question of the measure of discipline to be applied." Kennedy v. State Bar, 1939, 13 Cal.2d 236, 240, 88 P.2d 920, 921; see also: Clark v. State Bar, 1952, 39 Cal.2d 161, 246 P.2d 1, 8–9; Herron v. State Bar, supra, 24 Cal.2d at page 65, 147 P.2d at page 550; McGrath v. State Bar, 1943, 21 Cal.2d 737, 135 P.2d 1; Stein v. State Bar, 1940, 15 Cal.2d 668, 104 P.2d 497; Petersen v. State Bar, 1940, 16 Cal.2d 57, 104 P.2d 769; McCue v. State Bar, 1935, 4 Cal.2d 79, 47 P.2d 268.

In 1930, following trial in the Superior Court of the State of California in and for the County of Los Angeles, Mr. Lavine was convicted by verdict of a jury of the crime of attempted extortion, a felony, as charged in an indictment which specifically alleged that on or about March 10, 1930, Morris Lavine and another "did wilfully, unlawfully, and feloniously obtain certain personal property, to wit $75,000, of currency, etc., from one Charles H. Crawford, and three other persons named, and other persons to the grand jury unknown, with the consent of said persons; which said consent was then and there induced by the wrongful use of force and fear by and on the part of said defendants, to wit, by a threat then and there made and communicated to said four above-named persons and other persons, verbally by said defendants, to expose certain secrets affecting said named persons, and other persons to the grand jury unknown, and each of them; said personal property in money being then and there the property of Charles H. Crawford, etc." People v. Lavine, 1931, 115 Cal.App. 289, 1 P.2d 496, 497, hearing in California Supreme Court denied, July 30, 1931, appeal dismissed, 1932, 286 U.S. 528, 52 S.Ct. 500, 76 L.Ed. 1270.

In 1934 Mr. Lavine received a full pardon from the Governor, but the California Supreme Court in commenting upon the effect of it observed that "it does not close the judicial eye to the fact that once he had done an act which constituted the offense. * * * The very essence of a pardon is forgiveness or remission of penalty. * * * It implies guilt, and does not wash out the moral stain." In re Lavine, 1935, 2 Cal.2d 324, 41 P.2d 161, 163, 42 P.2d 311.

As a result of his conviction of the felony of attempted extortion Mr. Lavine was disbarred from practice in this Court on August 10, 1932. Following his reinstatement to practice in the California courts, he was reinstated in

this Court by order entered March 21, 1936.

This past record sheds light upon the character of one who would invoke the paramount bankruptcy jurisdiction of this Court to lay the extraordinary writ of injunction not only upon innocent persons but also upon the State Court itself, and to do so by means of a false and fraudulent petition representing to this Court *inter alia* that there existed $95,000 in "stocks and bonds which the Historical Society has brought *as trustee for the * * * Pioneer Society * * *"*; that this fund constituted the "assets" of the Pioneer Society; and that the Pioneer Society had at least some unadjudicated claim to have the $95,000 fund applied to the payment of its debts.

As *Poor Richard* wisely said: "Half the truth is often a great lie." Benjamin Franklin, *Poor Richard's Almanac* (1758).

Mr. Lavine's fraud upon this Court and his abuse of the injunctive process stand in bold relief when it is borne in mind that every claim asserted by the Pioneer Society to the $95,000 now held in public charitable trust by the Historical Society was in 1953 fully and completely adjudicated and rejected by final judgment of the California Supreme Court. Any man in the street, then, would presumably have a better-grounded legal claim to this trust fund; at the very least a final adverse judgment—the bar of *res judicata*—would not confront his claim.

As the Supreme Court of California said in Pickering v. State Bar:

"Section 6103 of the Business and Professions Code * * * provides that any violation by an attorney of his oath or professional duties constitutes cause for suspension or disbarment.

"And section 6068 of that code prescribes, in part, that it shall be the duty of an attorney 'never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law.' *The presentation to a court of a statement of fact known to be false presumes an intent to secure a determination based upon it and is a clear violation of the quoted provision.*

* * * * * *

"The conduct denounced by the Business and Professions Code is not the act of an attorney by which he successfully. misleads the court, but the presentation of a statement of fact, known by him to be false, which tends to do so. *It is the endeavor to secure an advantage by means of falsity which is denounced.*

"The lack of direct evidence of an intent to deceive or that the petitioner acted out of malice or with the hope of profit does not, as contended by him, compel a determination in his favor. Nor is the fact that no one was deceived or damaged a defense * * *." 1944, 24 Cal.2d 141, 144–145, 148 P.2d 1, 3; italics added.

Mr. Lavine admits the facts. He could do no less, since they are a matter of record—a record made in the State Court and in this Court by Mr. Lavine himself. As for the state of mind with which he did the admitted acts of misrepresentation and concealment, little more need be said.

To indulge the high improbability that what he did was not deliberate and wilful is to face the necessity of attributing his misconduct to gross negligence. This would aid him not at all, as such negligence itself is ground for the severest of discipline. See Stephens v. State Bar, 1942, 19 Cal.2d 580, 583, 122 P.2d 549, 550; Trusty v. State Bar, 1940, 16 Cal.2d 550, 553, 107 P.2d 10, 12.

Moreover a finding that failure to disclose the adverse outcome of the State Court proceedings resulted from negligence would ignore Mr. Lavine's lawyer-like ability and industry over the years. Unfortunately, this well-known ability and industry itself points up the deliberate and willful character of the concealment of facts indispensable to

proper disposition of the matter by this Court. His intelligence, capabilities, and experience would have led him to set forth at least the results of the State Court proceedings; but lack of the moral fibre necessary to an attorney appears to have stayed his hand.

Henry S. Drinker, Esquire, long-time Chairman of the Standing Committee on Professional Ethics and Grievances of the American Bar Association, in his excellent treatise on *Legal Ethics* points to the forceful language of Judge Magruder in People ex rel. Attorney General v. Beattie, 1891, 137 Ill. 553, 574, 27 N.E. 1096, 1103:

> "The lawyer's duty is of a double character. He owes to his client the duty of fidelity but he also owes the duty of good faith and honorable dealing to the judicial tribunals before whom he practices his profession. * * * He violates his oath of office when he resorts to deception, or permits his clients to do so. * * * If he suffers false * * * [information] to be presented to the presiding judge, with the possible result of inducing the latter to take jurisdiction of a cause, in which there would otherwise be no power to act, and to grant a judgment or decree which the law would prohibit if the [true facts] were known, he cannot shield himself behind his supposed obligations to his client." See Drinker, Legal Ethics 75 (1953).

The Clerk will enter the following order herein:

By reason of Morris Lavine's willful violation of Rule 11 of the Federal Rules of Civil Procedure, and by reason of Morris Lavine's willful and deliberate fraud upon this Court and his willful and deliberate abuse of the injunctive processes of this Court, all as shown by the files and records and proceedings "In the Matter of the Los Angeles County Pioneer Society, a corporation, Debtor," numbered in Bankruptcy No. 62,149–WM on the records of this Court, see In re Los Angeles County Pioneer Society, 40 Cal.2d 852, 257 P.2d 1, 7–10, certiorari denied Los Angeles County Pioneer Society v. Historical Society of Southern Cal., 1953, 346 U.S. 888, 74 S.Ct. 139, Morris Lavine is subject to appropriate disciplinary action as a member of the bar of this Court; and in view of his past conduct of which this Court takes judicial notice insofar as it is a matter of public record. See People v. Lavine, 115 Cal.App. 289, 1 P.2d 496; Lavine v. People of State of Cal., 286 U.S. 528, 52 S.Ct. 500, 76 L.Ed. 1270; In re Lavine, 2 Cal.2d 324, 41 P.2d 161, 42 P.2d 311.

It is now ordered that the Clerk forthwith strike the name of Morris Lavine from the roll of attorneys entitled to practice in this Court, and that Morris Lavine be disbarred from all right and privilege hereafter to practice as an attorney, counsellor solicitor, proctor or advocate in this Court.